GEORGE MELLISON, et al., v. CHARLES T. ALLEN.

SPECIFIC PERFORMANCE, *Not Enforced; Equity.* Where a party occupying lands of the United States with a view of acquiring title thereto under the provisions of the homestead laws, before the expiration of five years from the date of his entry and the ripening of his homestead right, sells an undivided interest therein, receives full payment, and executes a contract to convey such interest by warranty deed after the perfecting of his title, *held,* that a court of equity will not lend its aid to compel the specific performance of the contract.

### *Error from Saline District Court.*

ACTION by *Allen* against *Mellison* and two others, to compel the specific performance of a contract to convey an undivided one-half interest in the northeast quarter of section 8, township 11, range 17, west of the sixth principal meridian. At the November Term, 1882, of the district court, the defendants' demurrer to plaintiff's petition was overruled, and judgment was rendered for plaintiff. Defendants allege error therein, and bring the case here. The facts appear in the opinion.

*A. D. Gilkeson,* and *Chas. A. Hiller,* for plaintiffs in error.
*W. P. Montgomery,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action to compel the specific performance of a contract to convey real estate. A demurrer

to the petition was overruled, and defendants allege error. The facts as disclosed by the petition are, that on August 6, 1878, George Mellison, one of the defendants, was occupying a tract of land, with the intention of obtaining title to it under the homestead laws of the United States. He contracted to sell the undivided half to plaintiff, received full payment, and executed a contract to convey by deed of general warranty within one year. He represented that he would and could prove up his homestead claim within one year, and would then, as by his contract, convey the interest sold to plaintiff. He did, in fact, prove up on the first of June, 1880, but then declined to convey, and this action was commenced.

It will be perceived that the single question is, whether the contract to convey, made prior to the ripening of his homestead right and the proving-up of his homestead claim, was a legal and valid contract, and one whose specific performance equity will enforce. The validity of this contract depends primarily on the laws of the United States. By section 2298, Revised Statutes of the United States, no person is allowed to homestead more than one quarter-section. Sections 2289, 2290 and 2291 prescribe who may homestead, and the conditions and mode of procedure. On making entry at the land office, the party is required to make affidavit that the application is made for his exclusive use and benefit; for the purpose of actual settlement and cultivation, and not, either directly or indirectly, for the use or benefit of any other person. The certificate or patent will not issue until the expiration of five years from the date of such entry, and then only upon proof of occupation or cultivation for the term of five years, and upon affidavit that no part of such land has been alienated, except as provided in section 2288. This last section authorizes a transfer for churches, cemeteries and school purposes, or for the right-of-way of railroads. Thus it will be perceived that the law contemplates a five-years continuous occupation by the homesteader, with no alienation of interest, except for the named purposes. It is true these sections contain no express prohibition on aliena-

tion, and no declaration of forfeiture or penalty in case of alienation; and yet the homestead right cannot be perfected, in case of alienation, without perjury by the homesteader. The statute respecting preëmption, section 2262, is more stringent and express. For that requires the preëmptor to make oath that he has not directly or indirectly made any agreement or contract in any way or manner with any person whatsoever, by which the title he is seeking to acquire should inure in whole or in part to any person except himself; and also provides that any person swearing falsely in such oath shall forfeit the money which he may have paid for such land, and all right and title to the same; and further, that any grant or conveyance which he may have made shall, with certain exceptions, be null and void. Under this last section, we held, in *Brewster v. Madden*, 15 Kas. 249, that a mortgage made by a preëmptor is an alienation, and void. Now it is argued on the one hand that it is a matter of course for a court of equity to decree a specific performance of a contract for the conveyance of real estate, except in cases where it is shown to be unjust and inequitable to do so, (*Waynick v. Richmond*, 11 Kas. 488;) that there is no express prohibition on alienation by a homesteader, or a forfeiture for such alienation; that the only thing which stands in the way of such an alienation is the perjury imposed upon the homesteader; that no man should be permitted to plead his own wrong in avoidance of his contract; that in this case there was no direct alienation, but only a contract to alienate in the future; that whatever of wrong the homesteader might be guilty of, the government alone could take advantage of, while he himself was estopped to plead it; and further, that the homestead is for the benefit of the homesteader, and that he should be permitted, by contract or otherwise, to make all the profit he can out of it.

On the other hand, it is contended that the homestead is a gift from the government to the homesteader, conditioned upon his occupation for five years and upon his making no disposition or alienation during such term; that the affidavit

of non-alienation is as clear an expression of the legislative intent as a direct prohibition; that the whole policy of government in this respect would be thwarted if the homesteader were permitted to alienate prior to the expiration of the five years; that a successful alienation could be accomplished only by perjury; and an attempted alienation would only offer a constant inducement to the homesteader to abandon his occupation, and thus deprive the purchaser of any possibility of acquiring title to the land; that a contract whose consummation necessarily rests on perjury is illegal; that both purchaser and vendor are parties to the wrong, and that courts refuse to enforce such a contract not from any regard to the vendor, but from motives of public policy; and finally, that courts of equity have always exercised a discretion in enforcing the specific performance of contracts to convey, and that it would be strange indeed if a court of equity lent its aid to enforce the performance of a contract founded upon perjury and entered into in defiance of a clearly expressed will of the government.

We think the latter reasoning correct, and that whether the contract be absolutely void, or not, it is so clearly against the will and policy of the government, and so necessarily resting upon perjury, that a court of equity will have nothing to do with it. The case of *Brake v. Ballou*, 19 Kas. 397, is very strongly in point. In that case we held that a parol contract concerning the purchase and conveyance of lands belonging to the United States, made in violation of the spirit of the laws of the United States and in fraud thereof, cannot be enforced, specifically or otherwise, by a court of equity. It is true the contract in this case was in writing, but we cannot think that this fact gives a party a higher standing in a court of equity. The contract is none the less in disregard of the spirit of the laws of the government, and none the less calls for perjury on the part of the vendor. A court of equity should not encourage the making of such contracts, by lending its aid to enforcing them. (See also *McCue v. Smith*, 9 Minn. 237.)

25—30 KAS.

It may also be noted that a contract to convey in the future, coupled with a receipt of the full purchase-money, is in substance and within the spirit of the statute, if not in form, an alienation.

We think, therefore, the demurrer should have been sustained. The judgment will be reversed, and the case remanded, with instructions to sustain the demurrer.

All the Justices concurring.