## J. B. WATKINS v. PETER P. HOUCK *et al.*

1. REAL ESTATE MORTGAGE — *Fraudulent Judgment, No Benefit to Parties.* The general rule is, that where a real-estate mortgage has been executed, containing full covenants of warranty, that a subsequent acquired title by the mortgagor inures to the benefit of the mortgagee, but where the mortgagor, after the execution of the mortgage, obtains judgment fraudulently quieting his title to the mortgaged land against one who is the owner thereof, and such judgment is subsequently vacated, with the consent of all the parties thereto, on

account of the fraud, neither the mortgagor nor the mortgagee acquires any benefit or title under the fraudulent judgment.

2. Title, *Pretended Title Bought in to Quiet.* A person who is the owner in fee simple of a tract of land may buy in a pretended title with the view to quiet the enjoyment of his land, and the purchase of such a title cannot impair or disturb his prior title.

*Error from Lyon District Court.*

ACTION by *J. B. Watkins,* against *Peter B. Houck,* Mary L. Hall, Joseph Wheat, Laura B. Wheat, Edward F. Murray, Warren & Harrison, Kellogg & Sedgwick, and J. M. Campbell, to foreclose a mortgage given by Peter B. Houck and wife upon the following-described premises: The northeast quarter of section number 29; also, the northwest quarter of the southwest quarter of section number 28, all in town 15, range number 12, east of the 6th principal meridian, in Lyon county, Kansas. Trial had on the 11th day of February, 1888, before the court without a jury. The court made the following findings of fact:

"1. On and prior to June 29, 1858, Jacob Hall owned the land in controversy, and also a large amount of other lands in Johnson and other counties in the state of Kansas.

"2. On July 22, 1861, one Munkers sued the said Jacob Hall and one Porter, as Hall and Porter, in Lyon county, and attached the land in controversy; said attachment was dissolved October 24, 1861, and another writ of attachment was thereupon issued and levied upon said land October 26, 1861.

"3. On October 8, 1861, Jacob Hall gave a warranty deed of all his Kansas lands, including the land in controversy, to McCoy and Waldo, which was intended as a mortgage to secure a large debt due to them from said Jacob Hall. This deed was recorded in Lyon county on November 21, 1861.

"4. On August 3, 1863, the sheriff of Lyon county, Kansas, upon an order of the court, made after judgment, sale and confirmation duly had in the suit mentioned in conclusion No. 2 hereof, conveyed the land in controversy to one Munkers, who was the plaintiff in said suit. Said deed was duly recorded in said Lyon county September 14, 1863.

"5. On November 22, 1865, said Munkers received an *alias* deed to said land, upon the sale and order aforesaid,

which was duly recorded in said Lyon county on April 13, 1866.

"6. On August 27, 1869, said McCoy and Waldo began suit in the Johnson county district court, to foreclose said warranty deed mentioned in conclusion No. 3 hereof. Said Munkers was a party to said suit, and appeared and filed an answer therein. In said suit said McCoy and Waldo obtained a decree of foreclosure and an order to sell of said lands, including the land in controversy, and that the proceeds of said sale be applied to the payment of the debt due to said McCoy and Waldo. The said Munkers in said suit was decreed to have a first lien on the land in controversy to the amount of $1,800, which lien was subsequently paid by the said McCoy and Waldo.

"7. On February 2, 1871, said Munkers conveyed the land in controversy to the defendant Peter P. Houck, by usual warranty deed. The deed constituting said conveyance was duly recorded in said Lyon county May 30, 1871.

"8. On November 2, 1874, the defendants Peter P. Houck and wife mortgaged said land to one M. L. Ross. Said mortgage was duly recorded on the same day in said Lyon county. Said mortgage by its terms became due November 2, 1879, or whenever any part of the principal or interest was due and unpaid. On May 1, 1878, a semi-annual payment of interest fell due; it is yet due and unpaid. A copy of which said mortgage is attached to plaintiff's petition herein, marked 'B.'

"9. On October 12, 1876, the defendant Peter P. Houck began suit in said Lyon county against the said McCoy and Waldo to quiet his title to the land in controversy. He gave said defendants notice by publication only — they being then non-residents of the state of Kansas. They had no notice of said suit other than said publication. On March 13, 1877, said Houck obtained his decree on default.

"10. On April 25, 1877, said Houck conveyed the land in controversy to William McCoy, of the firm of McCoy & Waldo, by warranty deed. Said deed was duly recorded in said Lyon county on June 2, 1877.

"11. On July 25, 1877, said William McCoy received a sheriff's deed to the land in controversy, and other lands, after decree, sale and confirmation duly had in the suit in Johnson county mentioned in conclusion No. 6 hereof. The sheriff's sale was made on October 8, 1876.

"12. On April 18, 1879, the said Ross began suit in Lyon

county to foreclose the mortgage in this suit against Peter P. Houck, Mary Hall and William McCoy, and obtained a decree of foreclosure and an order of sale against Peter P. Houck only. At the sale made in pursuance of said order, the plaintiff herein purchased the land in controversy, and obtained a sheriff's deed therefor January 13, 1881.

"13. On June 18, 1885, the heirs of Jacob Hall conveyed the land in controversy to the said William McCoy. The deed was duly recorded August 7, 1885.

"14. On March 12, 1886, said William McCoy conveyed said land to Joe Wheat. The deed was duly recorded April 21, 1886.

"15. June 5, 1886, the plaintiff began this suit, the note and the mortgage sued on having been assigned to him by the said Ross before maturity.

"16. The defendant Peter P. Houck has been a non-resident of and absent from the state of Kansas ever since April 1, 1879.

"17. M. L. Ross, in his said foreclosure proceedings, dismissed his suit as to the defendants McCoy and Hall, before trial and before judgment, and took personal judgment on September 3, 1879, and decree against the defendant Peter P. Houck alone, who had been served by publication as aforesaid.

"18. At the March term, 1881, of the district court in said Lyon county, a decree by confession, purporting to vacate and set aside the decree obtained by Peter P. Houck, mentioned in conclusion No. 9 hereof, was entered in said court. The decree thus sought to be vacated recites 'that at the commencement of this suit and up to the time of this decree, Peter P. Houck was the owner of and in the actual, peaceable and quiet possession of the land in controversy, and that the defendants David Waldo and William McCoy claimed jointly and severally an estate, judgment lien and interest in, upon and to said real estate above described, adverse to the possession and ownership of the plaintiff, and that said claim of said defendants, and each of them, is absolutely void as against the ownership and possession of the plaintiff herein and to said real estate. Wherefore, upon motion by Ruggles & Sterry, plaintiff's attorneys in said cause, it is by the court considered and adjudged that the plaintiff is the owner of and in the actual possession of the above-described land, and that the adverse claim of the interest, judgment lien and estate therein by the said defendants, and each of them, is wholly

void and of no force or effect as against the title and ownership of the plaintiff therein and thereto.'

"19. Neither the said Ross, nor the said Watkins, were parties to the above-mentioned decree by confession, nor did they or either of them have any notice or knowledge thereof, until after its rendition, neither were they or either of them parties to the decree of March 17, mentioned in conclusion No. 9 hereof, nor did they or either of them have any notice or knowledge thereof until after its rendition.

"20. The decree obtained by the said Peter P. Houck, and mentioned in conclusion No. 9 hereof, and the decree by confession mentioned in conclusion No. 18 hereof, were both between the same parties and in the same suit—the one vacating the other—and after the entry of the decree vacating the former judgment, the suit in which such former judgment was obtained was dismissed by Peter P. Houck, without prejudice.

"21. The said decree by confession was based upon a confessed finding therein, to the effect that the suit in which the decree sought to be vacated was obtained was begun by the said Houck with the fraudulent intent on his part to deprive the said Waldo and McCoy of their title, interest and estate in the land, which they obtained through the Johnson county suit hereinbefore mentioned, and with a full knowledge of all the facts and for the purpose of defeating and annulling said Johnson county judgment and decree.

"22. On February 11, 1888, there was due from the said Peter P. Houck to plaintiff on the note and mortgage in this suit the sum of $2,623, including $49.52 taxes paid by plaintiff.

"23. On March 5, 1886, Joe Wheat and wife mortgaged the land in controversy to Warren and Harrison for $2,500. The note and mortgage were by them duly assigned to the defendant Murray, and there is now, February 11, 1888, due him on said note and mortgage the sum of $3,080, with interest at the rate of 12 per cent. per annum from February 11, 1888. On the 7th day of March, 1886, said Wheat and wife mortgaged said land to said Warren and Harrison for the sum of $1,800, upon which there is now due the sum of $2,214. Both of said mortgages were duly recorded March 9, 1886.

"24. On May 7, 1886, the said Wheat and wife conveyed the undivided one-half of said land to John Campbell. Mrs. Mary L. Hall has no interest whatever in the land in question.

"25. On April 25, 1887, the said Wheat and wife mortgaged said land to Kellogg & Sedgwick for the sum of $500, upon which there is now, February 11, 1888, due the sum of $530, with interest at the rate of 8 per cent. per annum.

"26. On March 5, 1886, the said Joe Wheat and wife mortgaged said land to said Warren and Harrison for the sum of $250, upon which there is now due the sum of $308, with interest at the rate of 8 per cent. per annum."

And thereupon the court made and filed the following conclusions of law:

"1. When the defendant purchased of Munkers he took subject to whatever decree might be entered in the Johnson county suit then pending, and he got nothing.

"2. The decree obtained by the defendant Peter P. Houck, quieting his title to said land, was vacated by the parties thereto, and the suit dismissed, which left the defendant, as before, with nothing.

"3. The plaintiff has no vested right in said decree which would prevent the parties thereto from vacating the same. His right to the land after the decree was the same as it was when his mortgage was given.

"4. The defendants Murray, Warren and Harrison, and Kellogg & Sedgwick, are each entitled to judgment and decree as prayed for.

"5. The proceeds arising from the sale of said land ought to be applied as follows, viz.: First. To the payment of the judgment in favor of the defendant Murray. Second. To the payment of the judgment in favor of the defendants Warren and Harrison. Third. To the payment of the judgment in favor of the defendants Kellogg & Sedgwick.

"6. The proceedings in the attempted foreclosure by M. L. Ross were void, and his dismissal as to all the defendants except Houck, and such foreclosure proceedings, did not in anywise affect this plaintiff."

The plaintiff filed his motion for judgment upon the findings of fact, which was overruled. He also filed a motion for a new trial, which was overruled. Thereupon, the court rendered judgment in favor of the defendants as follows:

"It is thereupon considered, ordered and adjudged by the court that the defendant Joseph Wheat is hereby adjudged and decreed to be the owner of said land; that the defendant Joseph Wheat has a paramount title to and is the owner of

said land as against the plaintiff herein, and that the plaintiff has no interest, title, or estate, or claim thereto, whatever, and that said defendant Joseph Wheat hereby recover his costs of said plaintiff herein, taxed at $46.13. It is further decreed that their defendant E. F. Murray recover of and from his co-defendants, Joseph Wheat and Laura B. Wheat, his wife, the sum of $3,080, with interest thereon at the rate of twelve per cent. per annum from February 11, 1888, and that the defendants Warren and Harrison recover of their co-defendants, Joseph Wheat and Laura B. Wheat, his wife, upon their first mortgage, the sum of $2,214, with interest thereon at the rate of twelve per cent. per annum from February 11, 1888, and that they recover of Joseph Wheat and Laura B. Wheat, upon their second mortgage, the sum of $308, with interest thereon at the rate of twelve per cent. per annum from February 11, 1888; that the said sums respectively are a second and third lien upon the said land described in plaintiff's petition; and that the defendants Kellogg & Sedgwick do have and recover of and against the defendants Joseph Wheat and Laura B. Wheat his wife the sum $530, and interest thereon at the rate of twelve per cent. per annum from February 11, 1888; that said judgment is a fourth lien upon the said land; that the judgment herein rendered in favor of said defendant E. F. Murray is a first and prior mortgage lien upon said land; that all of said mortgages are hereby foreclosed, and if said several judgments are not paid within six months from this date, the said real estate will be sold according to law, without appraisement, and the proceeds of such sale be applied, first, to the costs and expenses of sale; second, to the costs of suit, except the amount of costs taxed to plaintiff; third, to the payment of judgment in favor of defendant Murray; fourth, to the payment of judgment in favor of defendants Warren and Harrison; fifth, to the payment of the judgment in favor of the defendants Kellogg & Sedgwick. And hereof let execution issue."

The plaintiff excepted, and brings the case here for review.

*W. J. Patterson*, for plaintiff in error.

*Kellogg & Sedgwick*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by J. B. Watkins to foreclose a mortgage upon real estate, executed and

delivered by Peter P. Houck and wife on the 2d of November, 1874, to M. L. Ross, to secure the payment of $1,000, and certain interest notes. The real estate described in the mortgage is as follows: The northeast quarter of section 29, also the northwest quarter of the southwest quarter of section 28, in town 15, range 12, containing two hundred acres, situate in Lyon county, in this state. Before the maturity of the mortgage, or the notes secured thereby, they were assigned to J. B. Watkins, the plaintiff. In the trial court, the defendants Peter P. Houck and Mary Hall did not file any answer or pleading, or otherwise appear. The defendants Joseph Wheat and Laura B. Wheat — being subsequent purchasers — filed an answer alleging:

"1. A general denial.

"2. Plaintiff was not the owner of the note and mortgage.

"3. The proceedings in a suit of M. L. Ross v. Peter P. Houck et al., were a bar.

"4. The five-year statute of limitations had run."

The other defendants, Edward F. Murray, Warren and Harrison, and Kellogg & Sedgwick, filed substantially the same answer, with the addition of cross-petitions asking the foreclosure of mortgages executed subsequently to the mortgage of plaintiff. To these answers plaintiff filed replies containing a general denial and matters in avoidance. The trial court decided that the plaintiff had no interest, title or claim in the real estate described in the mortgage, and rendered judgment in favor of the defendants, Murray and Warren and Harrison and Sedgwick, as prayed for by them. The plaintiff excepted, and brings the case here.

It appears from the findings of fact of the trial court, that in 1858 Jacob Hall obtained from the United States a grant of the land in controversy and other lands lying in the counties of Johnson, Osage, Lyon, and Morris. The patent was issued to him for the lands on the 10th day of October, 1862. Prior to the issuance of the patent and on the 8th of October, 1861, Hall conveyed the lands by a deed, absolute upon its face, to William McCoy and David Waldo. This deed was

intended as a mortgage to secure a debt due to them from James Hall. It was recorded in Lyon county on the 21st of November, 1861. On July 22, 1861, James C. Munkers brought an action against Jacob Hall in the district court of Lyon county, and attached the land in controversy, but this attachment was dissolved October 24, 1861. An *alias* writ of attachment was issued and levied upon the land October 26, 1861—but this was after the execution of the deed, intended as a mortgage, to McCoy and Waldo. James C. Munkers prosecuted his action commenced on July 22, 1861, to final judgment, and on August 3, 1863, the sheriff of Lyon county, after a sale of the land and a confirmation thereof, conveyed the land to Munkers. This deed was recorded in Lyon county on September 14, 1863. On November 22, 1865, James C. Munkers, upon the foregoing sale, obtained another deed to the land, which was recorded in Lyon county on April 13, 1866. On August 27, 1869, McCoy and Waldo began an action in the district court of Johnson county to foreclose their deed or mortgage of October 8, 1861, and James C. Munkers was made a party to that action. He appeared and filed an answer. In the action McCoy and Waldo obtained a decree of foreclosure and an order to sell all the lands described in the deed, including the land in controversy. Munkers was decreed to have the first lien on the land to the amount of $1,800, which was paid by McCoy and Waldo. On February 2, 1871, James C. Munkers conveyed the land in controversy to Peter P. Houck by warranty deed. This deed was recorded in Lyon county May 30, 1871. Subsequently, Peter P. Houck and wife executed the mortgage to M. L. Ross heretofore referred to. On October 12, 1876, Peter P. Houck commenced an action against McCoy and Waldo in Lyon county to quiet his title to the land conveyed to him by Munkers. The defendants, being non-residents, were notified by publication. On March 13, 1877, Houck obtained a decree on default. On April 25, 1877, Houck conveyed the land to William McCoy. This deed was recorded in Lyon county on June 2, 1877. After McCoy and Waldo

obtained a decree of foreclosure in their action of August 27, 1869, the land in controversy was sold at sheriff's sale on October 8, 1876, and after a confirmation of the sale William McCoy received a sheriff's deed to the land on July 25, 1877. On April 18, 1879, M. L. Ross commenced an action in Lyon county to foreclose the mortgage set forth in the petition in this action. He obtained a decree of foreclosure and an order of sale against Peter P. Houck only. J. B. Watkins, the plaintiff, purchased the land in controversy at a sale made under that decree, and obtained a sheriff's deed on January 13, 1881. On June 18, 1885, the heirs of Jacob Hall conveyed the same land to William McCoy. This deed was recorded August 7, 1885. On March 12, 1886, William McCoy conveyed the land to Joseph Wheat. This deed was recorded April 21, 1886. At the March term of the district court of Lyon county for 1881, the judgment obtained by Peter P. Houck on October 12, 1876, in that court against McCoy and Waldo to quiet his title to the land, was, by agreement, set aside and declared void. Neither M. L. Ross nor J. B. Watkins were parties to the vacation of that judgment, nor did either of them have any notice or knowledge thereof until after it was entered. Neither Ross nor Watkins was a party to the action brought on October 12, 1876, by Houck against McCoy and Waldo. On June 5, 1886, J. B. Watkins, the plaintiff, began this action. The defendant, Peter P. Houck, is a non-resident of the state, and has been absent from the state ever since April 1, 1879. After Joseph Wheat obtained a conveyance of the premises, he executed several mortgages thereon. These are the mortgages upon which the district court rendered judgments in favor of some of the defendants.

It fully appears from these findings that James C. Munkers had no title to the premises in dispute on November 2, 1874, when he conveyed the land to Peter P. Houck, because his attachment, upon which the property was sold, was not levied until after the deed or mortgage of October 8, 1861, to McCoy and Waldo, and because McCoy and Waldo had satisfied

any and all liens he had on the land, amounting to $1,800·
The deed or mortgage from Jacob Hall to McCoy and Waldo
was on record in Lyon county on November 21, 1861, of
which Peter P. Houck had notice.   Therefore, on November
2, 1874, when Peter P. Houck and wife executed the mort-
gage to M. L. Ross, Houck had no title or interest to convey,
transfer, or mortgage.   The contention of the plaintiff is, that
the judgment obtained in the district court of Lyon county
by Houck on March 13, 1877, against McCoy and Waldo,
quieting his title to the land, inured immediately to the bene-
fit of M. L. Ross, the mortgagee, as the mortgage contained
covenants of warranty.   Of course, the general rule is, that a
subsequent acquired title inures to the benefit of the mortga-
gee. (Boone, Mortg., §105; 2 Herman, Estop.,
§662; *Railroad Co. v. Cowdrey*, 11 Wall. 459;
*Lincoln v. Emerson*, 108 Mass. 90.)   The judg-
ment, however, of Houck *v.* McCoy and Waldo
was a fraudulent judgment, as it could only have been ob-
tained by fraud and perjury. (*Laithe v. McDonald*, 7 Kas.
254.)   Houck had no title or claim of title to quiet.   Subse-
quently, with his assent, this judgment was vacated and set
aside.   The findings of the court in reference to the vacation
of that judgment are as follows:

1. Real-estate
mortgage—
fraudulent
judgment, no
benefit to par-
ties.

"The decree obtained by the said Peter P. Houck and men-
tioned in conclusion No. 9 hereof, and the decree by confes-
sion mentioned in conclusion No. 18 hereof, were both between
the same parties and in the same suit—the one vacating the
other—and after the entry of the decree vacating the former
judgment, the suit in which such former judgment was ob-
tained was dismissed by Peter P. Houck, without prejudice.
The said decree of vacation was based upon a confessed find-
ing therein, to the effect that the suit in which the decree
sought to be vacated was obtained, was begun by the said
Houck with the fraudulent intent on his part to deprive the
said Waldo and McCoy of their title, interest and estate in
the land which they obtained through the Johnson county
suit hereinbefore mentioned, and with a full knowledge of all
the facts and for the purpose of defeating and annulling said
Johnson county judgment and decree."

Upon these findings, we do not think it can be held that M. L. Ross, or his assignee, the plaintiff, obtained any benefit whatever on account of the fraudulent decree or judgment. Neither Ross nor Watkins accepted the mortgage upon the faith of that decree or judgment, and as it was fraudulent in its inception, and subsequently set aside by consent of all the parties thereto on account of such fraud, nothing can be claimed for it. No title or benefit can be claimed under it or through it.

The plaintiff contends further, that as Peter P. Houck and wife conveyed the land in controversy to William McCoy by deed on April 25, 1877, and as McCoy accepted the same, that he thereby recognized Houck's title; that he and all persons claiming under him are estopped from denying such title, and that the defendants acquiring any title to the property through McCoy or Watkins, his grantee, took the same subject to Houck's title and the mortgage in suit. This argument is fallacious in that Houck had nothing but a fraudulent judgment upon which to found any deed. This judgment was set aside and must count for nothing. McCoy had title to the land before he obtained the deed from Houck and wife. The sheriff's deed to him was dated July 25, 1877, but related back to the sale of October 8, 1876. He had the right to

2. Title, pre-tended title bought in to quiet.

buy the pretended title of Houck with the view of quieting the enjoyment of his land. Clearly, the deed from Houck to McCoy, if it did not strengthen, did not have the effect to impair or destroy his prior title. By accepting the deed from Houck, McCoy did not forfeit or lose his own title. He obtained the deed simply to purchase his peace.

"It is not the policy of the law to deter persons from buying their peace and compel them to submit to the expense and vexation of law suits, for fear of having their titles tainted by defects which they would gladly remedy by purchase, where it can be done with safety." (*Coakley v. Perry*, 3 Ohio St. 344; *Donahue v. Klassner*, 22 Mich. 252; *Gardner v. Greene*, 5 R. I. 104.)

The judgment of the district court will be affirmed.

All the Justices concurring.