JOHN L. HUNT v. H. C. BOWMAN *et al.*

No. 11,798.    ( 63 Pac. 747.)

1. JUDGMENT LIENS—*Rights of Lien-holders Considered.* The
holder of a mortgage on real estate which is inferior in lien to a
prior judgment on the land mortgaged, but which judgment was
not followed by a levy within the year, may rightfully purchase
another judgment, also a' lien on the land, but inferior in time to
both the first judgment and the mortgage, and enforce the same
by a levy upon and sale of the mortgaged property within a year
from its rendition. The mortgagee buying the land sold under
said execution sale will take title paramount to the lien of the
first judgment.

2. NOTE AND MORTGAGE—*Judgment on Note Alone.* The holder
of a note secured by mortgage may bring an action on the note
alone, obtain judgment thereon, and sell the mortgaged property
upon execution. Such proceeding is not prohibited by section 396
of chapter 95, General Statutes of 1897 (Gen. Stat. 1899, § 4663).

Error from Shawnee district court; Z. T. HAZEN, judge.  Opinion filed February 9, 1901.  *In banc.*  Reversed.

*Gleed, Ware & Gleed,* and *John L. Hunt,* for plaintiff in error.

*Bergen & Dana,* for defendants in error.

The opinion of the court was delivered by

SMITH, J.: This was an action in ejectment.  Defendant in error H. C. Bowman was the owner of a judgment against M. E. Martin which was a lien on the real estate in controversy.  Henry King was the holder of a mortgage on the same property, executed and recorded after the rendition of the Bowman judgment and junior thereto.  William Sims was also the owner of a judgment against Martin, which, at the time of its rendition, was inferior in time and lien to both the Bowman judgment and the King mortgage.  This last judgment of Sims was bought by the plaintiff in error, John Hunt, as trustee for King and for his benefit.  The last execution on the Bowman judgment was issued on December 3, 1894, and returned unsatisfied on January 5, 1895, by order of the execution creditor.  It was issued more than one year subsequent to the rendition of the judgment, but within five years thereafter.  Execution was issued on the Sims judgment, owned by Hunt, within one year after its rendition, and the property in controversy was sold thereunder and bought in by plaintiff in error.  He received a sheriff's deed, upon which is based his right to recover the real estate involved in this action.  He was denied a recovery in the court below, and comes here by proceedings in error.

Section 4729 of the General Statutes of 1899 (Gen. Stat. 1897, ch. 95, § 476) reads:

"No judgment heretofore rendered or which hereafter may be rendered, on which execution shall not have been taken out and levied before the expiration of one year next after its rendition, shall operate as a lien on the estate of any debtor to the prejudice of any other judgment creditor."

If there was no mortgage lien on the property intermediate the two judgment liens there could be no serious controversy between the parties. In such case the title of plaintiff in error derived through the sheriff's deed would be obviously paramount, made so by the failure of the first judgment lien-holder to take out and levy an execution within a year after his lien became fixed on the land. (*Lamme v. Schilling*, 25 Kan. 92.) It is insisted, however, that because of the King mortgage the provisions of the statute above quoted cannot be appplied in strictness; that Hunt, acting for King, could not, by the purchase of the Sims judgment and by selling the land upon execution under it, secure to the mortgagee rights superior to those of a judgment creditor whose judgment was prior in time to the mortgage. The industry of counsel for defendants in error has produced two early cases from Ohio which seem at first reading to sustain their position.

*1. Rights of lien-holders considered.*

In *John T. Brazee and others v. The Lancaster Bank and others*, 14 Ohio, 318, a case in many respects like the present one as to facts, the court concluded that because of an intervening mortgage the liens of the prior and subsequent judgments were not equal, and that the first was paramount. It was said:

"The elder judgment is a lien upon the entire land, and the entire value of the land may, if necessary, be

appropriated for its satisfaction.   But the subsequent judgment creditor has not a lien to the same extent. His lien extends only to that interest in the land which remains after the satisfaction of the mortgage, and there can certainly be no propriety in saying that a lien which attaches to the entire land shall be postponed to one which attaches only to a part of the land ; or, more properly speaking, to the interest which remains in the judgment debtor after having executed a mortgage upon the land.''

See, also, *Fitch v. Mendenhall et al,* 17 Ohio, 578.   In 1846, when the above cases were decided, a mortgagee in that state took something more than a mere lien on the land.   After condition broken the legal title vested in the holder of the mortgage, and he could recover and keep possession of the lands, subject only to the right of the mortgagor to redeem.   (*Childs v. Childs and others*, 10 Ohio St. 339.)   In the decision quoted from it will be noted that the court attaches importance to the fact that the lien of the senior judgment covered the entire land, and that the junior lien rested only on the interest which remained in the judgment debtor after having executed a mortgage upon the property ; that is, the equity of redemption.   The latter judgment is referred to as attaching only to a part of the land.

In this state the common-law attributes of mortgages have been wholly set aside.   A mortgage is a mere security, creating a lien, but vesting no title and giving no right of possession either before or after condition broken, and the mortgagor's right of control is not impaired by the existence of the lien.   (*Chick and others v. Willetts*, 2 Kan. 384.)   Both the Sims and the Bowman judgments were liens on the whole real estate of Martin, and it cannot be said under our system that one of these judgments attached to a part

of the land only by reason of the mortgage lien existing in favor of King. We conclude, therefore, that as the Sims judgment was enforced by a timely execution the purchaser thereunder took title unaffected by the Bowman judgment lien, execution to enforce the same not having been issued within a year from the date when the judgment was rendered.

In thus applying the express terms of the statute fixing the priority of judgments we have given little consideration to the King mortgage. Under its conditions, the note secured by it has been due since 1894. It seems to have been abandoned as a lien, and right of action upon it and its accompanying note barred by the statute of limitations. We think that the holder of such a mortgage might lawfully succeed, by assignment, to the rights of the owner of a judgment junior to it to the same extent that a stranger might have so done.

In *John T. Brazee and others v. The Lancaster Bank and others*, supra, the land was sold and the proceeds brought into court. The claimants, consisting of judgment creditors and mortgagees, were each asserting preferred rights to the fund. We cannot say that the decision would have been the same had the mortgagees made no claim to the money, and that the mere fact of the existence of an old mortgage, probably barred by limitation (under which no rights were asserted), intervening between the judgments, would have moved the court to do otherwise than to enforce the plain provisions of the statute respecting the liens of judgments.

It having been shown that the note upon which the Sims judgment was founded was secured by a mortgage which was never foreclosed on the property in controversy, it is claimed that

2. Judgment on note alone.

the execution sale is void, being prohibited by section 396 of chapter 95 of the General Statutes of 1897 (Gen. Stat. 1899, § 4663). This section is merely directed against the sale of real estate pledged for the payment of a debt by the mortgagee, or a trustee in his behalf, under a power of sale, without a decree of court ordering the same. It can have no reference to an execution sale under a judgment like the one under consideration. The owner of a note secured by mortgage may sue and take judgment upon the note alone and is not required to foreclose his mortgage. (*Lichty v. McMartin,* 11 Kan. 565.)

In some states it has been held that the holder of a note and mortgage may not proceed to judgment on the note only and then levy on and sell out the mortgaged property under an execution. Several authorities are cited to this effect. One of the chief reasons given why such action is not permitted is that in a proceeding of that kind the time of redemption allowed in foreclosure cases is cut down and shortened, to the detriment of the mortgagor. Here no prejudice could arise in that respect, for, by force of chapter 109 of the Laws of 1893 (Gen. Stat. 1897, ch. 95, §§ 521, 544; Gen. Stat. 1899, §§ 4742, 4769), a period of eighteen months redemption exists from the time of sale under a judgment resulting from a suit to foreclose the mortgage, or from an action on the note alone. Again, it appears from the testimony that the plaintiff in error bought nothing but the Sims judgment rendered on the note. Having sued on the note alone, and then having parted with his judgment, we think the mortgagee has by his acts evidenced a waiver of any lien under his mortgage. The claim that the sheriff's deed to Hunt was void, because against public policy, is not tenable. If he had been the attorney of King,

his purchase of the Sims judgment would not have been in opposition to the interests of his client, but in furtherance thereof.

The tax deed of defendants in error was deficient in description, and void, under the authority of *Spicer v. Howe*, 38 Kan. 465, 16 Pac. 825. It was expressly pleaded in the reply that the tax deed was void on its face. This, in the absence of a verification, was sufficient to raise the question of the validity of the deed.

The judgment of the court below will be reversed and a new trial ordered.

POLLOCK, J., not sitting.