C. M. STARK *et al., as Partners, etc.,* v. H. M. MORGAN *et al.*

No. 14,561. (85 Pac. 567.)

SYLLABUS BY THE COURT.

1. MORTGAGES—*Not an "Alienation."* A mortgage in this state, being merely security for a debt, conveys no title and is not an "alienation" within the meaning of section 2291 of the Revised Statutes of the United States.

2. ——— *Public Land — Homestead Claimant — Validity.* A mortgage upon government land, made by a claimant holding under the homestead act prior to final proof, for the purpose of procuring money to improve the land, or for any purpose, provided it is not intended thereby to transfer the title in evasion of the statute, is not void nor in violation of the homestead laws.

3. ——— *After-acquired Title—Mortgagor Estopped.* A homestead claimant who executes a mortgage under such circumstances, and afterward procures the title to the land from the government, will be estopped from defeating, by his own act, the enforcement of the lien created by the mortgage. His after-acquired title inures to the benefit of the mortgagee.

4. ——— *Cases Overruled.* The doctrine of *Brewster v. Madden,* 15 Kan. 249, and such portions of the opinion in *Mellison v. Allen,* 30 Kan. 382, 2 Pac. 97, as follow that case, disapproved.

Error from Graham district court; CHARLES W. SMITH, judge. Opinion filed April 7, 1906. Reversed.

*Rex V. Wilcox,* for plaintiffs in error.

*George W. Jones,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.: This suit was brought to foreclose certain mortgage liens upon land which, at the time the liens were created, was government land occupied by the defendants under a homestead entry, and before final proof thereon. Defendant Morgan and his wife executed two written agreements, dated February 1, 1892, and November 28, 1892, respectively, which were promises to pay for certain fruit-trees to be planted upon the land in question, and were in effect mortgages upon the land. The agreements were acknowledged and recorded. The answer of the defendants raised the following defense:

"And for a second defense defendants aver and say that said debt is not a lien upon the southeast quarter of section 2, township 8 south, range 25 west, Graham county, Kansas, because they say that at the time of the execution and delivery of the written contract declared upon and the creating of the debt the title of said land was in the United States of America, defendants having made homestead entry upon it and were occupying it under the United States homestead law, and at the time of the execution and delivery of said contract and the creating of the debt they had not made final proof under the United States homestead law, and did not do so until on or about September, 1894."

A demurrer to this defense was overruled, a trial was had, and the court gave judgment against the defendants for $1600, the amount of the indebtedness, but denied the lien and ordered plaintiffs' mortgages canceled. Of that part of the judgment denying plaintiffs' lien and directing the cancelation of the mortgages plaintiffs complain.

From the statement it appears that but one question is raised: Are the mortgages valid liens upon defendants' land? The provisions of the homestead act require the applicant at the time the original entry is made to make affidavit "that his entry is made for the

purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person." (Rev. Stat. U. S. § 2290.) On final proof he is required to make affidavit "that no part of such land has been alienated, except as provided" therein. (Rev. Stat. U. S. § 2291.) The exception mentioned relates to transfers for church, cemetery, school or railroad purposes. Section 2296 provides that no lands acquired under the homestead act "shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

Defendants in error rely upon *Brewster v. Madden,* 15 Kan. 249, and *Mellison v. Allen,* 30 Kan. 382, 2 Pac. 97. In the former case the question considered was whether a mortgage given by a preemptor prior to the entry of the lands was void. The preemption act of September 4, 1841, required the claimant prior to his entry to make oath that he had not, "directly or indirectly, made any agreement or contract, in any way or manner, with any person whatsoever, by which the title which he might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself." (Rev. Stat. U. S. § 2262.) It also provided that "any grant or conveyance which he may have made, except in the hands of *bona fide* purchasers, for a valuable consideration, shall be null and void." The court, speaking by Mr. Justice Brewer, construed the preemption act to mean that congress intended by this section that when title passed to the preemptor it should pass perfect and unencumbered, and the mortgage was held to be void. This is recognized as the leading case in support of the doctrine announced. We believe it has never been followed except by this court in *Mellison v. Allen, supra.* The reasoning of *Brewster v. Madden* has been denied and the case overruled by most of the other courts. That case relied upon the case of *McCue v. Smith*

*et al.,* 9 Minn. 252, 86 Am. Dec. 100, which was decided in 1864, and which was expressly overruled in *Jones et al. v. Tainter et al.,* 15 Minn. 512, decided in 1870, five years before *Brewster v. Madden.* In overruling *McCue v. Smith et al.* the Minnesota court said:

"It is true that in *McCue v. Smith et al.,* 9 Minn. 252, 86 Am. Dec. 100, and in *Woodbury v. Dorman,* 15 Minn. 338, it was held that a mortgage made in pursuance of an agreement such as appears in this case was void in the hands of the original mortgagee, and as against persons claiming under the mortgagee not being *bona fide* purchasers, and unquestionably the court below was justified by those cases in holding the mortgage here void in the hands of Tainter. In the case of *Woodbury v. Dorman* (in which one member of the court dissented), an application was made immediately after the filing of the opinion for a reargument by the appellant, who claimed that this court had fallen into error in holding a mortgage, given under circumstances similar to those presented by this case, void; and although a reargument was denied for reasons peculiar to that case, the majority of the court in denying the same took occasion to express their dissent from the holding in that case, and to announce that they should feel at liberty in future to reexamine the question there determined. The majority of the court think that the question ought not to be passed over in the case at bar, regarding it as one which affects interests of too much importance and extent to permit them to sanction by silence or acquiescence what they deem a mistaken view of the law. In *McCue v. Smith et al.,* which was followed in *Woodbury v. Dorman,* it was held that such mortgage was void under the thirteenth section of the preemption act of September 4, 1841. . . . In the opinion of the majority of this court, a simple agreement, by a person proposing to apply for and enter land under the act of September 4, 1841, to execute a mortgage to secure the payment of money furnished him with which to pay for such land, is not such an agreement as is referred to in the provision just quoted from the preemption act. It is not an agreement by which the title to be acquired—that is to say, the *fee*—should inure, in whole or in part, to the benefit of any person other than the preemptor; on the contrary, the presumption is that a mortgagor in-

tends to pay the mortgage debt, and discharge his land from the encumbrance of the mortgage, so that his title *shall not inure* to the benefit of the mortgagee. . . . But the *result* is not important. The question is, Was there any *contract* or *agreement* by which the preemptor fixed this result? Did the preemptor *contract* or *agree* that the title to be acquired—that is to say, the *fee*—*should inure to* the benefit of another? In other words, Did the preemptor contract or agree to do anything which, when done, would *pass* the *title*, in whole or in part, to another, so that the preemption would, as to such whole or part, be a mere *conduit* of the title? We are clear that no such contract or agreement is fairly to be inferred from a simple agreement, made before preemption, to secure the whole or a part of the purchase-money by a mortgage upon the premises to be preempted. The mortgage contemplated by such contract, or agreement, is but a security (as this court has often held), and its execution does not have the effect of making the title acquired by the preemptor, to wit, the fee, inure, in whole or in part, to the benefit of another." (Pages 514-516.)

The only other case cited and relied upon in *Brewster v. Madden* is *Warren v. Van Brunt,* 86 U. S. 646, 22 L. Ed. 219. There the question of the validity of a mortgage was not in any way involved. The contract held illegal was one by which the preemptor contracted before final proof to sell an interest in the land, which contract was, of course, in violation of the spirit and letter of the law. The court held that "an entry of the public land by one person in trust for another being forbidden by statute, equity will not, on a bill to enforce such a trust, decree that any entry in trust was made." (Syllabus.)

The case of *Mellison v. Allen,* 30 Kan. 382, 2 Pac. 97, was decided in 1883. The opinion in that case is also by Mr. Justice Brewer, and follows and approves *Brewster v. Madden, supra.* The land involved was a homestead, and the court refused to decree the specific performance of a contract for the conveyance of an undivided interest in the land made before final proof.

The distinction between the provisions of the homestead act and those respecting preemption is pointed out, but the decision is placed squarely upon the policy of the government expressed in the requirement that the occupant shall make oath at the time of final proof that no part of the land has been alienated. "It is true," the court said, "these sections contain no express prohibition on alienation, and no declaration of forfeiture or penalty in case of alienation; and yet the homestead right cannot be perfected, in case of alienation, without perjury by the homesteader." (Page 383.) It was held that the contract, whether absolutely void or not, "is clearly against the will and policy of the government, and so necessarily resting upon perjury that a court of equity will have nothing to do with it." (Page 385.) The case of *McCue v. Smith et al., supra,* was cited again, and relied on.

The supreme court of California, in *Orr v. Stewart,* 67 Cal. 275, 7 Pac. 693, had the same question before it in a case involving both the homestead and preemption laws. Stewart occupied the land under the homestead act, and executed a mortgage to Orr for money to pay for the land. After the foreclosure and sale to Orr, and after Orr had taken possession of the land under the sheriff's deed, Stewart commuted the entry under the preemption act and received a certificate of purchase. Orr brought the suit to quiet his title against Stewart. The mortgage was held valid, and plaintiff's title was quieted as against any title defendant had acquired subsequently from the government.

In a later case, decided in 1893 (*Stewart v. Powers,* 98 Cal. 514, 33 Pac. 486), the same court held that a mortgage executed by a preemption claimant before final proof was not a "grant or conveyance" within the preemption statute and was therefore valid. It was held that the mortgagor was estopped from defeating by his own act the lien attempted to be created, and that the mortgage was not void under the homestead

act, "unless . . . intended as a mode of trans-ferring the title in evasion of the statute." (Page 521.) The authorities were reviewed, and *McCue v. Smith et al.* referred to as supporting the other view; and it was noted that the Minnesota court had ex-pressly overruled the latter case in *Jones et al. v. Tainter et al.*, 15 Minn. 512; and *Brewster v. Madden* was mentioned as in line with the earlier overruled cases in Minnesota.

When *Brewster v. Madden* was decided it was in accord with the rulings of the commissioner of the general land-office, as well as those of the department of the interior; but in 1882 this department of the government faced about, and Mr. Teller, secretary of the interior, reviewed the former decisions in a care-ful opinion, and showed their unsoundness. In *Larson v. Weisbecker*, 1 Land Dec. Dept. Int. 409, he used this language:

"I am aware that the former rulings of your office and of this department—following the precedent of an early decision—have held that an outstanding mort-gage given by a preemptor upon the lands embraced in his filing defeats his right of entry upon the ground that such mortgage is a contract or agreement by which title to the lands *might* inure to some other per-son than himself. A careful consideration of this sec-tion leads me to a different conclusion, and to the opin-ion that, unless it shall appear under the rules of law applicable to the construction of contracts or otherwise that the title *shall* inure to another person, it does not debar the right of entry; and that *the mere possibility* that the title *may* so result—as in the case of an or-dinary mortgage—is not sufficient to forfeit the claim. . . . The statute under consideration requires from a preemptor, in my opinion, in order to the defeat of his right of entry, a contract *by force of which* title to the land must vest in some other person than himself; and it must appear that *such was his intention* at the time of making it. If, on the contrary, the mortgage was a mere security for money loaned, and the con-tract does not *necessarily* divert the title from him, it was not a contract or agreement within the meaning of section 2262."

The secretary held that the purpose of the law was to prevent speculative entries. The effect of this decision was limited to the case under consideration and to future cases. Since that time the rulings of the department have uniformly been that a mortgage given in good faith, executed prior to final proof, in no manner violates the provisions of either the preemption or homestead laws. This change in the rulings of the interior department is referred to and commented on by the court in *Wilcox v. John,* 21 Colo. 367, 40 Pac. 880, 52 Am. St. Rep. 246, in the following language:

"The rule then announced has, we think, been uniformly followed by the department since. It is founded upon sound reasons, and in practice it has not infrequently been of benefit to settlers in negotiating loans to carry them over periods of drought, or of business depression, and should be maintained if not inconsistent with the terms of the statute, as it is of the highest importance that the decisions of the courts in these matters should be in harmony with the rulings of the land department.

"The rule contended for by appellants, whereby a mortgage is held to be interdicted, is founded upon a somewhat forced construction of the words 'grant' and 'conveyance' as used in the statute. By the later, and, as we think, the better-considered cases, it is held that neither a mortgage nor a deed of trust is a grant or a conveyance within the prohibitory clause of the statute." (Page 370.)

In this case the Colorado court referred to *Brewster v. Madden,* 15 Kan. 249, as one of the few cases holding to the contrary view. The supreme court of Montana in a well-considered case has held that a mortgage of a preemption prior to final proof is not a grant or conveyance within the provisions of the preemption act, expressly overruling the former decision of that court in *Bass v. Buker,* 6 Mont. 442, 12 Pac. 922. In the later case (*Norris v. Heald,* 12 Mont. 282, 29 Pac. 1121, 33 Am. St. Rep. 581) the two lines of cases were exhaustively reviewed, and the change in the rulings of the interior department since *Brewster v. Madden*

was noted, and the reasoning of Secretary Teller in *Larson v. Weisbecker*, 1 Land Dec. Dept. Int. 409, approved. It was held, however, that "the purpose for which a sum of money may be borrowed becomes material to show that the mortgagor is acting in good faith, and not in collusion with the mortgagee to convey the title, and evade the provisions of the law." (Page 291.)

The case of *Stark et al. v. Duvall et al.*, 7 Okla. 213, 54 Pac. 453, is squarely in point. Plaintiffs in error in that case and in the case at bar are the same persons, the lien being for fruit-trees, and having been created in the same way. The land there was a homestead entry. The opinion reviewed the changes in the rulings of the interior department, and referred to *Brewster v. Madden* and the other cases from this court, but refused to follow them, preferring to adopt the reasoning of the later cases as in accordance with the rulings of the general land department of the government. (See, also, the following cases: *Spiess v. Neuberg and wife*, 71 Wis. 279, 37 N. W. 417, 5 Am. St. Rep. 211; *Celia Lang v. William H. Morey*, 40 Minn. 396, 42 N. W. 88, 12 Am. St. Rep. 748; *Fuller & Co. v. Hunt*, 48 Iowa, 163; *Howard v. Reckling*, 31 Ore. 161, 49 Pac. 961; *Dickerson v. Bridges*, 147 Mo. 235, 48 S. W. 825; *Weber v. Laidler*, 26 Wash. 144, 66 Pac. 400, 90 Am. St. Rep. 726; *Orr v. Ulyatt*, 23 Nev. 134, 43 Pac. 916; *Mudgett v. Dubuque and Sioux City R. R. Co.*, by Secretary Vilas, 8 Land Dec. Dept. Int. 243, 247; 26 A. & E. Encycl. of L. 411, 412.)

A mortgage in this state is not an alienation, but a mere security for a debt; it creates a lien, but vests no title. (*Chick and others v. Willetts*, 2 Kan. 384; *Kirkwood v. Koester*, 11 Kan. 471; *Hunt v. Bowman*, 62 Kan. 448, 63 Pac. 747; *Railway Co. v. Sharpless*, 62 Kan. 841, 845, 62 Pac. 659.)

It thus appears that *Brewster v. Madden*, 15 Kan. 249, stands opposed to the current of recent authori-

ties.   When it was decided the principal case upon which it relied had been discredited, and was no longer authority in the Minnesota court.   It is itself no longer in harmony with the policy of the department of the government which has to do with public lands.   When it was decided it accorded with the rulings of the interior department; and it may be noted that when it was followed in *Mellison v. Allen,* 30 Kan. 382, 2 Pac. 97, it was expressly stated that the contract declared to be void was against "the will and policy of the government."   This was true until the decision by Secretary Teller in *Larson v. Weisbecker,* 1 Land Dec. Dept. Int. 409, and it is apparent that the court's attention was not directed to the then recent change in the rulings of the department, which had occurred the previous year.

In the case at bar the land was held under the homestead law, and something might be argued in favor of upholding these mortgage liens upon the theory that the restrictions in the provisions of the homestead law are less stringent than those in the preemption act.   However, the courts as well as the interior department have recognized no distinction between mortgages executed upon land held under the preemption law, when that law was in force, and those held under the homestead law.   The purpose of the requirements in both is held to be to prevent speculative entries, and the right of the claimant to execute a valid mortgage upon the land for any legitimate purpose is no longer doubted.   There is much force in the suggestion that in cases of this kind the courts should hold in harmony with the policy and will of the government, as announced in the rulings of the land department; and in view of all that has been said we are constrained to hold that the doctrine announced in *Brewster v. Madden,* 15 Kan. 249, and followed in *Mellison v. Allen,* 30 Kan. 382, 2 Pac. 97, should be disapproved.   To do so requires little or no disturbance of any vested rights or rule of property.

It is contended that section 2296 of the Revised Statutes of the United States, *supra,* which provides that no land acquired under the provisions of the act shall be liable for any debt contracted prior to the issuance of the patent, will prevent the lien of the mortgages from attaching. This contention has been decided squarely against defendants in error in *Watson v. Voorhees,* 14 Kan. 328, where it was held that congress did not intend by this act to place any restriction on the right of the owner voluntarily to encumber the land. It was there said that "the limitation was on the *creditor,* and not upon the *debtor.*" (See, also, *Weber v. Laidler,* 26 Wash. 144, 66 Pac. 400, 90 Am. St. Rep. 726.)

Since it appears, therefore, that the mortgages in no wise conflict with the provisions of the statute in relation to homestead entries, and that in this state they do not constitute an "alienation," and can in no sense stand in the way of the claimant's honest oath on final proof, they are clearly valid liens. If, however, it should be made to appear that a mortgage given under such circumstances was intended as a means of transferring the title in evasion of the provisions of the homestead act, it would be void; if made in good faith for any other purpose, it is valid.

The principles of after-acquired title and equitable estoppel apply with full force. Defendants in error at the time the liens were created had no title; but it is well settled that in such a case title acquired after the mortgage inures to the benefit of the mortgagee. (*Watkins v. Houck,* 44 Kan. 502, 24 Pac. 361; *Orr v. Stewart,* 67 Cal. 275, 7 Pac. 693; *Spiess v. Neuberg and wife,* 71 Wis. 279, 37 N. W. 417, 5 Am. St. Rep. 211; *Rauch v. Dech,* 116 Pa. St. 157, 9 Atl. 180, 2 Am. St. Rep. 598, and note; 2 Herm. Estopp. & Res Jud. § 895.)

We hold, therefore, that the mortgages were valid liens upon the land in question, and not in violation of the provisions of the homestead laws; that defendants

in error are estopped from defeating the liens attempted to be created by them; and that their after-acquired title inured to the benefit of the mortgagees.

The cause is reversed, and remanded for further proceedings in accordance with these views.

All the Justices concurring.