JOHNSTON, J., concurring.

HORTON, C. J., dissenting.

---

JOHN McKINNIS v. THE SCOTTISH AMERICAN MORTGAGE COMPANY, *substituted for John W. McAnulty.*

1. SUPREME COURT—*Another Party Substituted for Defendant in Error.* In an action for the possession of real estate the plaintiff was defeated in the trial court. He filed his petition in error in the supreme court to review the rulings of that court. During the pendency of the proceedings in the supreme court, defendant transferred his title and all his interest in the property in litigation to another party. *Held,* That the supreme court, upon application of such other party, may allow him to be substituted for the defendant in error as his successor in interest.

2. HOMESTEAD ENTRY—*Pretended Lease—Lasting Improvements—Patent—Estoppel.* On the 6th day of January, 1871, K. filed his homestead entry on a quarter-section of public land in Rice county, in this state. He resided thereon until June 30, 1874. On that date he entered into a parol contract with A. to sell to him the homestead and convey the same to him for $1,400, after he had received a patent. Eight hundred dollars was to be paid down in personal property, and $600 to be paid when the patent

was issued. For the purpose of attempting to avoid the inhibition of the homestead act, J. drew up a pretended contract of lease for three years, which was signed by the parties, but left with him. The property was turned over to A. by K., and the purchase-money was paid. A. continued in possession and control of the land for about 10 years, and was in possession at the time of the bringing of this action. After taking possession, with the knowledge, consent and encouragement of K., he made lasting and valuable improvements on the land of the value of about $7,000. A., at the instance of K., bought an outstanding title to the land from a party claiming the same, and obtained a deed from such party. K. executed a quitclaim deed to A. to the land which was not accepted, because it was not a warranty deed, and on account of a dispute about the payment of the purchase-price. On the 10th of September, 1883, K. obtained a patent from the government, and in a few months thereafter brought this action against A. to recover back the possession of the land. *Held*, That upon the above and foregoing facts, K. is estopped from disturbing A., or his successor in interest, in the possession of the land.

3. ILLEGAL AGREEMENTS — *Fraudulent Lease* — *Ejectment* — *Evidence for Defense*. Where a person has made a homestead entry upon public land in his possession, and, in violation of the homestead act, sells and transfers the land to another and agrees to execute and deliver to him a deed therefor so soon as he can obtain a patent, and in attempting to avoid the provisions of the homestead act forbidding any alienation of the land before the entry is completed, the parties sign, in pursuance of the contract of sale, a written lease for a term of three years, and the purchaser takes possession of the land, and continues in possession about 10 years, making lasting and valuable improvements thereon of great value, and subsequently a patent is issued to the party making the homestead entry, *held*, in an action brought by the person making such entry to recover back the possession of the land, the purchaser may give in evidence all of the facts concerning the illegal agreements entered into and may also show that the lease was simply executed to carry out the fraudulent purpose of the parties.

*Error from Rice District Court.*

On the 19th of February, 1884, *John McKinnis* commenced his action against *John W. McAnulty*, to recover the possession of 160 acres of land, described as follows : The southwest quarter of section 5 in township 20 south of range 8, in Rice county ; and also to

recover $2,000 for rents and profits. Trial had on the 25th of September, 1889. After the evidence had all been introduced, the court continued the case for argument until the 28th of February, 1890, and after the argument of counsel, the court made and filed the following conclusions of fact :

"1. That on the 6th day of January, 1871, the plaintiff, J. H. McKinnis, filed his homestead entry on the southwest quarter of section 5, township 20, range 8 west of the sixth principal meridian, in Rice county, Kansas ; that he resided thereon up to and about June 30, 1874: I find that he has been a soldier in the service of the United States government, and that on said June 30, 1874, he had resided upon said property a sufficient length of time, including the time allowed him on account of his service in the army, to entitle him, upon filing of final proof, of a patent from the United State government. I find that on said day he entered into a parol contract with the defendant to sell to him said homestead, and to convey the same after he had received a patent ; that the contract was that the defendant should pay him $1,400 for the homestead ; that he should pay the sum of $800 in cash and certain personal property, at that time turned over, and that the other $600 should be paid when the patent was received from the United States government and a warranty deed made by him to the defendant, which deed the plaintiff promised to make on receipt of said patent.

" I find that said parties went to E. C. Jones to have contract drawn up, but that they were informed that under the United States laws a sale could not be made of a homestead, and that, for the purpose of avoiding the inhibition of the United States statute in relation to the alienation of a homestead, the said E. C. Jones drew up a contract of lease for the said real estate for the term of three years, which lease was signed by the parties and left with the said Jones. The terms and conditions of the lease are substantially as follows : That in consideration of $800, to be paid as follows,

a team of horses, harness, spring wagon, and one or two horses valued at $640, and $160 in cash, to be paid by the 15th of July, 1874, said property was leased for the term of three years. Said lease contained all the ordinary covenants of a lease, the original of which is set out and attached to the deposition of the said Jones filed in this cause.

" I find that said property was turned over and said money paid as provided for in said lease and under their parol contract. I also find that said lease was not the original contract between said parties, but was a subterfuge adopted by them to avoid the provisions of the law of alienating homesteads prior to the receipt of a patent; that soon after making said contract of sale, defendant entered into possession of said premises, and has continued in possession and control thereof to the present date ; that he at once commenced making valuable improvements thereon ; that the plaintiff encouraged him in making such improvements, and told him on several occasions to continue making the same ; that he would convey the property to him as soon as he could get his patent. I find he continued making valuable improvements upon said premises with a full knowledge of the plaintiff, and that up to December, 1876, that the improvements that he had made thereon were of the value of $3,000, all of which were made with the plaintiff's consent and by his advice and encouragement and under the promise that as soon as he received his patent he would make him a deed. I find that on the 30th day of January, 1871, that the Atchison, Topeka & Santa Fe Railroad Company filed in the office of the Secretary of the Interior at Washington, D. C., its map of definite location of its lands granted it by the government in the state of Kansas ; that the same was immediately forwarded to the general land office, and that the land in controversy was covered by said map of definite location, and that from that time on the said Atchison, Topeka & Santa Fe Railroad Company claimed to be the owners of said real estate.

"I further find that some time in November, 1876,

the said railroad company had served a notice upon said defendant McAnulty to remove from said premises, and notified him of its claim to the title to said property, and that in the fall of 1876 both the plaintiff and the defendant had full knowledge of said railroad company's claim to the title thereof.

"I find that, prior to the fall of 1876, the plaintiff had removed to Iowa, and during the latter part of said fall returned to Kansas and went upon the premises in dispute and saw the improvements thereon, and that he encouraged the defendant to continue making said improvements and received some portion of the deferred payments from the defendant at the said time, which was paid him at his request; that at said time he went to the land office at Larned and made his final proof; that some time in November or December, of said year, the plaintiff and defendant took a journey to Topeka together, after making the final proof, and that the matter of their contract was talked over. It was there talked of and treated as a sale of said real estate; that the plaintiff encouraged the defendant to go on with his improvements and told him that he should never lose the property, and promised to make him a deed as soon as he got his patent from the government; that during said conversation the matter of the claim of the railroad to said land was talked over, and that said plaintiff at that time authorized and directed defendant to settle with the railroad company by the purchase of its outstanding title, and agreed that should he maintain his title, and get a title patent, he would make him a deed thereof; that on the 10th day of November, 1877, the said Atchison, Topeka & Santa Fe Railroad Company commenced a suit of ejectment against the defendant in the district court of Rice county, Kansas, to eject him from the possession of said premises, said suit being based upon the claim of title heretofore referred to. I find that subsequent to beginning said suit plaintiff was notified thereof, and that he authorized the defendant to settle with the railroad company; and, as the defendant understood, he was justified

from the language and conduct of the defendant to take a deed from the railroad company and purchase its title ; that on July 7, 1879, the defendant settled with said railroad company by paying the sum of $250, and he received from said railroad company a warranty deed to said premises, and the said plaintiff subsequently ratified said purchase. I find that subsequent to said purchase the plaintiff executed a quitclaim deed to said plaintiff and offered it to the defendant, and that the same was not accepted for the reason that the defendant claimed a warranty deed, and because there was some dispute between the parties at said time whether the payment of $600 was fully paid or not. I find that from December, 1876, down to the time of the commencement of this action, that the defendant had placed on the premises other and valuable improvements of the value of $4,000, making the total value of improvements placed thereon up to said date of the value of $7,000 — all of which were made with full knowledge of the plaintiff, by his direction, under the promise from him to make a deed should he ever receive a patent from the goverment. I find that the defendant in fact paid to the plaintiff, including the $250 paid the railroad company, more than the original purchase-price of said premises, and that there was due him (plaintiff) thereon, at the time of the commencement of this action, nothing. I find that in fact the filing of the entry of the homestead by the plaintiff was prior to the filing of the map of definite location of the railroad company, and that in fact his title to said real estate was superior to that of said railroad company. But I further find that at the time the defendants settled with the railroad company and took its deed to said premises, that this fact had not been ascertained, and that it was a matter of grave doubt to both the plaintiff and defendant as to whether the plaintiff could maintain his title as against the railroad company or not. I find that on the 10th day of September, 1883, a patent was issued by the government to the plaintiff, and the same was filed of record on the 24th of November, 1883, and that on

February 19, 1884, the plaintiff commenced the present action. I find that the defendant acted in good faith in making all the improvements upon said premises, and in the purchase of said title of the railroad company, and that he followed the plaintiff's instructions; that I am unable to find from the evidence and state at this time the rental value of said premises during the time it was occupied by the defendant from June 30, 1877, up to the date of the commencement of this action, but I find that said fact is unimportant from my view of the law in this case."

And thereon the court made and filed the following conclusions of law:

"1. I conclude that the plaintiff is estopped from disputing the title purchased by the defendant from the Atchison, Topeka & Santa Fe Railroad Company, and from setting up his patent subsequently acquired from the government to defeat the same.

"2. That the title acquired by the plaintiff by virtue of patent enured to the benefit of the defendant and became merged in his title already acquired.

"3. That the plaintiff has no right to the title to said property which he can be heard in good faith to establish at this time.

"4. That the defendant is the owner of all title to said real estate, including that conveyed by the patent to the plaintiff."

And thereupon the following proceedings were had:

"The plaintiff then and there produced to the court the following special findings of fact, and requested the court's finding thereon. The court made findings as follows:

"1. Where did McAnulty purchase the land in question? Where was the contract made? Was it written or parol contract? How much money was paid on it? What was the contract price to be paid for the land? Ans. That all the questions asked here above have already been answered in the findings of fact as filed by the court with the exception of that of

'Where was the contract made?' and that the court, to give the exact place, is unable to answer, as the contract lasted a day or two in making it, but was probably consummated at Atlanta on the day that the written lease was made. The second question, and all the facts appertaining thereto, have been already answered in the findings of fact filed by the court to-day.

"2. Was there ever any further contract or purchase for the land in question ever made by the defendant McAnulty, aside from the one between McKinnis and McAnulty made on June 30, 1874? A. This question and all the facts appertaining thereto, have all been already answered in the findings of fact filed by the court to-day. The court understands this question now to be asked as a conclusion of law, and the conclusion of the court as to the matter of law, has already found that the original contract was changed and modified by parol, which in law is equivalent to making a new contract.

"3. If the court answers the above question that there was another contract aside from the last one above referred to, then when and where was the contract made, what was the contract-price, and how much money was paid? A. I find that there was a modification of the contract, which partially consisted in an agreement that the defendants should purchase the outstanding title of the Santa Fe Railroad Company and pay for it, coupled with the agreement that if the plaintiff should maintain his action that his title was superior to that of the Santa Fe Railroad Company, that he would make him a deed as soon as he got his patent from the United States government, with the further condition that the defendant should continue making valuable improvements on said premises. I find that this contract was made in the fall or winter of 1876, on the road to Topeka, Kas., and was made some time after the bringing of the action of ejectment by the Atchison, Topeka & Santa Fe Railroad Company against McAnulty, and subsequent to January 12, 1879. It is therefore ordered and decreed

by the court that the plaintiff's action be and the same is hereby dismissed, and judgment rendered against the plaintiff for costs, taxed at $224.95.''

The plaintiff excepted, and brings the case here.

*A. M. Lasley*, for plaintiff in error.

*John N. Ives, J. W. Brinckerhoff*, and *J. D. S. Cook*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: After this cause was argued and submitted to this court, John W. McAnulty, defendant below, asked permission to confess the alleged errors. Thereupon The Scottish Mortgage Company filed its application to be substituted as defendant in error, and showed that, under a foreclosure sale of a mortgage executed by McAnulty and wife upon the premises in dispute, the company had become the purchaser and owner of the property during the pendency of this proceeding in this court; that through such foreclosure sale the former title and interest of McAnulty in the property had become vested in the company. Under the provisions of the civil code, which are applicable by analogy to petitions in error, the application of The Scottish Mortgage Company is granted, and that company is substituted as defendant in error, as successor in interest of John McAnulty. (Civil Code, §§ 36, 40, 41, 42.)

It appears from the findings of the court that the plaintiff obtained his patent from the government by fraud and perjury. It also appears from the findings that he will be successful in his attempt to commit a gross fraud upon John McAnulty, or his successor in interest, if this court should reverse the judgment rendered against him. Conceding that the contract

of purchase made by McAnulty with McKinnis was void, as in violation of the statute of the United States, and also conceding that the railroad company had no valid title to the land on January 7, 1879, when McAnulty paid the company $250; yet, upon the findings, the plaintiff is not entitled to invoke the aid of any court to assist him in making successful his attempt to defraud McAnulty by putting him in possession of land the title of which he obtained fraudulently from the government. All of the equities of the case are against him.

"It is a general rule of law that a man will not be allowed to set up his own illegal acts for the purpose of avoiding his own deed. And with regard to executed illegal contracts, where the parties thereto are in equal wrong, it is a general rule that the law will not aid either of them, but will leave each and all of them where it finds them." (*Mellison v. Allen*, 30 Kas. 382; *Brake v. Ballou*, 19 id. 397; *Tucker v. Allen*, 16 id. 312.)

In *Weeks v. White*, 41 Kas. 569, Frisbie, who continued the agreement of the first homestead settler with Markham & Byers from whom Weeks purchased, died before any patent was issued. His widow took the title of the land in dispute in her own right at the death of her husband, and not as his heir. She made her own application to the land office to prove up under the homestead act; therefore, Mrs. Frisbie, from whom White obtained his title, was not guilty of fraud and perjury in obtaining her title from the government. White's title was not tainted. The other cases cited by the plaintiff against the judgment rendered are not in all respects founded upon the same state of facts as disclosed in this record. The case of *Nichols v. Council*, 9 S. W. Rep. (Ark.) 305, and the other decisions referred to from Arkansas, ruling that

the courts may lend their aid to a party to recover possession of land, after he has transferred his possession and alienated the same to another in violation of the homestead act, are not satisfactory. A man ought not to be allowed to recover real estate in the possession of another by alleging his own fraud and perjury. Courts are not instituted for the purpose of affording guilty parties relief in evading the laws of the country, and in deriving benefits from their own illegal acts. "The transfer of property for an unlawful purpose is valid as between the parties to such transfer." (Bump. Fraud. Conv. 436 ; *U. P. Rly. Co. v. Kennedy*, 20 Pac. Rep. [Colo.] 696.)

It is insisted that the trial court erred in receiving evidence tending to prove that McAnulty purchased the land of plaintiff, and that the lease was executed by the parties as a mere subterfuge to evade the statute of the United States. The general rule is that a tenant cannot be permitted to controvert the title of his landlord under whom he enters into possession, but in this case, the lease itself was a fraud upon the government, and was only executed as a pretext to carry out the arrangement under which McAnulty was to obtain possession and title. A lease to real estate and the transfer of possession thereunder is a species of conveyance. (*Coughlin v. Coughlin*, 26 Kas. 116 ; *Land Co. v. Gas Co.*, 43 id. 518.)

It is next insisted that the trial court committed error in receiving evidence, and that its findings are contrary thereto. The cause was tried by the court without a jury. We have carefully examined the whole record, and find no material error. There was sufficient evidence to sustain the findings.

The judgment will be affirmed.

All the Justices concurring.