Spiess vs. Neuberg and wife.

SPIESS, Appellant, vs. NEUBERG and wife, Respondents.

*February 29 — March 27, 1888.*

*Public lands: Homestead entry: Mortgages: Pre-emption: Subsequently acquired title: Equity.*

1. One C., having made a homestead entry of land, assigned the same and conveyed the land by warranty deed to the defendant, who mortgaged the land to one S., and afterwards gave second and

third mortgages to the plaintiff. The mortgage to S. was fore-closed, and the plaintiff, to save her own mortgages, purchased at the foreclosure sale, received the sheriff's deed, and thereafter paid taxes on the land. Subsequently the defendant took the land from the plaintiff to work on shares, and, while so in possession under the plaintiff, made a new homestead entry of the land, com-muted the same by payment of the government price, and obtained title from the United States, under sec. 2301, R. S. of U. S. *Held*, that the mortgages given by the defendant were valid, and the title subsequently acquired by him inured to the benefit of the plaintiff.

2. Some of the facts which make such title inure to the benefit of the plaintiff not being of record, she may maintain an equitable ac-tion to establish her right.

APPEAL from the Circuit Court for *La Crosse* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

At some time prior to May 14, 1877, Hans C. Colstad had taken and made a homestead entry of the E. ½ of N. E. ¼ of section 33, township 15 N., of range 5 W., the same then being the property of the United States, and May 14, 1877, caused a receipt for the payment of the requisite amount therefor to be recorded in the office of register of deeds. On the same day Colstad sold and assigned to the said defendant *John Peter Neuberg* his right or claim in and to said homestead entry, and executed to him a warranty deed of the land, which was recorded. February 28, 1879, said *Neuberg* borrowed $1,200 of one Stephenson, to secure which, with interest, the said *Neuberg* and wife executed and delivered to said Stephenson their mortgage on 273 acres of land, including said eighty. June 27, 1879, the said *Neuberg* borrowed of the plaintiff $125, to secure which, with interest, the said *Neuberg* and wife executed and de-livered to the plaintiff their mortgage on the 273 acres. January 17, 1880, the said *Neuberg* borrowed of the plaint-iff $100, to secure which, with interest, *Neuberg* and wife

executed and delivered to the plaintiff their mortgage on said 273 acres. *Neuberg* being in default, the Stephenson mortgage was foreclosed, and judgment of foreclosure and sale entered thereon, June 3, 1881, upon which judgment there was due for principal, interest, and costs, July 24, 1882, $1,812.58, for the payment of which the whole 273 acres was on said last-mentioned day sold, and bid in by the plaintiff, who paid the amount thereof, being compelled to do so to save her said two mortgages, upon which nothing had been paid. The plaintiff thereupon received a duly executed sheriff's deed on said foreclosure sale, and recorded the same, but failed thereby to get the legal title to said eighty acres, for the reason that the title was in the United States. The balance of the land was worth much less than the amount then due on the Stephenson mortgage. Since said sheriff's deed, the said *Neuberg* took said lands to work on shares from the plaintiff. The plaintiff had paid during that time $145.36 taxes on said lands. January 28, 1886, the said *Neuberg* made a United States homestead entry of said described eighty acres, and December 15, 1886, commuted the same, proved his occupation thereof, and paid the United States government price of $100, and received the title thereof from the United States, subject to the revision of his proof by the land department.

December 22, 1886, the plaintiff commenced this action to enjoin the defendants from disposing of or incumbering the eighty acres, and to have the title thereof so acquired by *Neuberg* adjudged to inure to the benefit of the plaintiff. The defendants answered, admitting most of the facts stated, but claiming the title free from said mortgages or any claim of the plaintiff. Upon the trial the court found, in effect, as conclusions of law upon the facts stated, that as to the eighty acres, said several mortgages were void, being in contravention of the provisions and policy of the United States

homestead law; that the title subsequently acquired by *Neuberg* under said law did not inure to the benefit of the plaintiff; that the plaintiff had failed to establish a right to equitable relief, and therefore the action be dismissed. From the judgment entered thereon accordingly the plaintiff appeals.

*John J. Cole*, for the appellant, to the point that in cases both of homesteads and pre-emptions the courts have upheld the rights and equities of assignees and mortgagees, cited, besides cases cited in the opinion: *Whitney v. Buckman*, 13 Cal. 536; *Christy v. Dana*, 34 id. 548; *S. C.* 42 id. 174; *Douglas v. Gould*, 52 id. 656; *Camp v. Grider*, 62 id. 20; *Pierson v. David*, 1 Iowa, 23.

For the respondents there was a brief by *Prentiss & Miller*, and oral argument by *Mr. G. C. Prentiss.* They contended, *inter alia*, that land entered under the homestead law cannot become subject to a mortgage lien or be alienated prior to the issuing of a patent therefor. Secs. 2296, 2290, 2291, R. S. of U. S. The facts of this case cannot be construed as a contract to convey this land when entered. The courts have uniformly held that contracts violating a similar provision in the pre-emption laws are void. *Warren v. Van Brunt*, 19 Wall. 654; *Webster v. Bowman*, 25 Fed. Rep. 889; *Gile v. Hallock*, 33 Wis. 523; Jones on Mortg. secs. 177, 178. See, also, *Weber v. Zeimet*, 30 Wis. 283; *Paige v. Peters*, 70 id. 178. The plaintiff's title cannot be aided by the judgment of a court of equity. If the law has not given him the title, the court cannot. Having the legal title, and the defendant being in the adverse possession of the land, the plaintiff's remedy is by action of ejectment. He cannot maintain an action in a court of equity. *Lee v. Simpson*, 29 Wis. 333; *Gray v. Tyler*, 40 id. 579; *Remington v. Foster*, 42 id. 608; *Pennoyer v. Allen*, 51 id. 360.

. ' CASSODAY, J.   Upon the facts stated the inferences are irresistible that *Neuberg* has been in the possession of the eighty ever since he bought out Colstad and received the warranty deed of the same, May 14, 1877; that he claimed the same by virtue of such purchase and deed and the prior homestead entry of Colstad until he lost the same by the sheriff's sale and deed.   There can be no question but what the several mortgages were given to create a lien upon whatever right, title, and interest *Neuberg* had in the eighty as well as the other lands, and that the respective mortgagees advanced their moneys thereon in good faith and with the expectation of thereby acquiring adequate security for the same.   With the same good faith and expectation, and to save her own mortgages, the plaintiff manifestly advanced the requisite amount of money on her purchase at sheriff's sale, and subsequently in paying taxes on the land.   Prior to 1886, there seems to have been no pretense but what the plaintiff had acquired whatever equitable right, title, and interest in the eighty *Neuberg* had previously possessed.   During that period of three and a half years, *Neuberg* had remained in possession under and in subordination to such equitable right, title, and interest of the plaintiff.   There can be no question but what *Neuberg* made the entry of January 28, 1886, and the commutation of the same, December 15, 1886, for the purpose of cutting off such equities of the plaintiff and converting the possession which he thus held under her into an adverse possession and hostile title.   This was held to be legitimate by the trial court, on the theory that the mortgages were given in contravention of the provisions and policy of the United States homestead law.

1. While the title remains in the United States, it is undoubtedly true that " no lands acquired under the provisions of " that law can " in any event become *liable* to the satisfaction of any debt contracted prior to the issuing of

the patent therefor." Such is the statute. Sec. 2296, R. S. of U. S. This court has held that prior to such issuance of a patent such lands were not liable to attachment, execution, or mechanic's lien. *Gile v. Hallock*, 33 Wis. 523; *Paige v. Peters*, 70 Wis. 178. In the case last cited it is said in the opinion, in effect, that the right of the occupant of such lands to mortgage his interest in the same does "not come within the prohibition of the federal statutes cited." That assertion is not only sustained by the authorities there cited, but others. *Nycum v. McAllister*, 33 Iowa, 374; *Fuller v. Hunt*, 48 Iowa, 163; *Kirkaldie v. Larrabee*, 31 Cal. 456; *Orr v. Stewart*, 67 Cal. 275; *Cheney v. White*, 5 Neb. 261; *Jones v. Yoakam*, 5 Neb. 265. We are not aware of any adverse decision in the supreme court of the United States.

2. But the same chapter of the Revised Statutes of the United States in effect provides that nothing therein "shall be so construed as to prevent any" homesteader "from paying the minimum price for the quantity of land so entered, at any time before the expiration of the five years, and obtaining a patent therefor from the government, *as in other cases directed by law*, on making proof of settlement and cultivation as provided by law, granting preemption rights." Sec. 2301, R. S. of U. S. Having commuted under that section, it is claimed that *Neuberg* is entitled to all the benefits and was subjected to all the restraints and prohibitions of chapter four of those statutes, entitled "Pre-emptions." Assuming for the present that when *Neuberg* made the several mortgages he was under the same disabilities that he would have been had he previously pre-empted the eighty, the question recurs whether such disabilities were such as to avoid the mortgages. That chapter provides, in effect, that "any grant or conveyance which" such pre-emptor "may have made, except in the hands of *bona fide* purchasers for a valuable consideration,

shall be null and void," with an exception not material here. Sec. 2262, R. S. of U. S. But that provision did not operate as a disability, since the several mortgagees advanced their money in good faith, and the plaintiff bid in the property on the foreclosure sale and paid thereon the amount of money stated in good faith. The same section required such pre-emptor, before being allowed to enter the lands, to take the requisite oath, among other things, to the effect that he had " not directly or indirectly made any agreement or contract, in any way or manner, with any person whatsoever, by which the title which he might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself." *Ibid.* And that chapter further provides that "all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void." Sec. 2263, R. S. of U. S. According to the supreme court of the United States, these provisions were enacted to prevent such pre-emption rights from being acquired by land speculators. *Myers v. Croft,* 13 Wall. 291. In that case Mr. Justice DAVIS, speaking for the court, said: " In view of these facts, we cannot suppose, in the absence of an express declaration to that effect, that Congress intended to tie up these lands in the hands of the original owners until the government should choose to issue the patent. If it had been the purpose of Congress to attain the object contended for, it would have declared the lands themselves unalienable until the patent was granted. Instead of this, the legislation was directed against the assignment or transfer of the right secured by the act, which was *the right of pre-emption, leaving the pre-emptor free to sell his land after the entry,* if at that time he was in good faith the owner of the land and had done nothing inconsistent with the provisions of the law on the subject." To the same effect, *Lessee of French v. Spencer,* 21 How. 228;

*Thredgill v. Pintard*, 12 How. 24; *Landes v. Brant*, 10 How. 348. These views are in harmony with the adjudications of this court, wherein it has been held that such pre-emptor, having made the entry, paid his money, taken his receipt or certificate, and recorded the same (as Colstad did), has the entire equitable title and interest, which he may assign, transfer, and convey at pleasure; and that the legal title will vest in his grantee upon the issuing of the patent. *Dillingham v. Fisher*, 5 Wis. 475; *Stephenson v. Wilson*, 37 Wis. 489. In *Lamb v. Davenport*, 18 Wall. 307, it was held that, " unless forbidden by some positive law, contracts made by actual settlers on the public lands concerning their possessory rights, and concerning the title to be acquired in future from the United States, are valid as between the parties to the contract, though there be at the time no act of Congress by which the title may be acquired, and though the government is under no obligation to either of the parties in regard to the title." It follows from these several adjudications that Colstad was under no disability which prevented him from conveying his equitable title and interest in the land to *Neuberg*, and that the latter was under no disability which prevented him from creating valid liens thereon by way of mortgages, as he did. These things being so, there can be no question but what such equitable right, title, and interest passed to the plaintiff by such foreclosure sale and sheriff's deed.

3. The plaintiff having thus acquired such equitable right, title, and interest in and to the eighty, was she divested of the same by the subsequent entry and commutation by *Neuberg* while in possession as her tenant? To hold that she was, would be the consummation of a gross fraud under the guise of a legal right. This being so, it should not be sanctioned by the courts, unless forced to do so by positive law or binding authority. Here it has neither. The law on the subject seems to be pretty well settled to

the effect that where the owner of such equitable right, title, and interest transfers the same by way of mortgage or otherwise to a *bona fide* purchaser for a valuable consideration fully paid, and afterwards acquires the legal title by patent from the United States, such legal title at once inures to the benefit of such *bona fide* purchaser, and estops such patentee from claiming title as against such purchaser. This is sustained by the authorities already cited. This rule is well illustrated and strongly supported by *Thredgill v. Pintard, supra*, in which it was held that " where a settler upon the public lands had a pre-emption right to them, and sold them to a person who again sold them to a third party, the original vendor has a lien upon the land for the balance of the purchase money still due, and can enforce it by a bill in chancery, *notwithstanding the vendee has taken out a patent in his own name under a subsequent pre-emption law.*" So, in *Lessee of French v. Spencer, supra*, it was held that "a patent to the original beneficiary, who had previously sold his right, inured to the benefit of the purchaser, and related back to the date of the entry; and the heir of the grantor in such a deed is estopped from setting up a legal title under the patent." See, also, *Hughes v. U. S.*, 4 Wall. 232. In *Orr v. Stewart, supra*, the homesteader, after having mortgaged his right, title, and interest, and the mortgage foreclosed and bid in by the mortgagee, who obtained thereon a sheriff's deed, commuted his homestead entry into a cash entry, as here, and paid in full the price, and received a duplicate receipt and certificate of purchase therefor; but it was held that such after-acquired title by the mortgagor fed the mortgage, and inured to the benefit of the mortgagee and purchaser at such foreclosure sale.

4. Upon the principles stated it may seem that the plaintiff had an adequate remedy at law, and hence that there was no necessity to bring this action. But the patent

gave to *Neuberg* the apparent legal title of record; and some of the facts which make that title inure to the benefit of the plaintiff are not of record, and hence there is a necessity of establishing the plaintiff's right to the land by an adjudication.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in accordance with the prayer of the complaint.

