## PITTSBURG MORTGAGE INV. CO. et al. v. SNEED.

No. 7545—Opinion Filed July 25, 1916.

(159 Pac. 515.)

**1. Public Lands—Lands of United States—Homestead Incumbrance.**

A mortgage, executed by an entryman upon the lands acquired by him under the provisions of the United States statute for the homesteading of public lands, being a voluntary act. the consideration therefor being money advanced to enable the entryman to commute his land and the balance thereof being paid after the final receipt was issued to him, may be enforced by a sale of said lands for the satisfaction of the debt thus created, and this is true, even though the final certificate issued to the entryman was afterwards canceled and he was ordered to make other proof which he did and received a final certificate and a patent to said lands. It is held that the title thus acquired by him inured to the benefit of the first mortgagee, who furnished him the money with which to commute his land, and other money after the first final certificate was issued to him.

**2. Conflicting Decisions Overruled.**

The cases of Stark v. Glaser, 19 Okla. 503, 91 Pac. 1040, and Stark v. Fallis, 26 Okla. 358, 109 Pac. 66, in so far as the same are in conflict with this opinion, are hereby overruled.

(Syllabus by Hooker, C.)

Error from District Court, Texas County; W. C. Crow, Judge.

Action by Edna B. Sneed against the Pittsburg Mortgage Investment Company and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

Nelson Case, for plaintiffs in error.

John L. Gleason, for defendant in error.

Opinion by HOOKER, C. Prior to May 16, 1906, Clay S. Mason made settlement as a homesteader on the land in controversy here. and continued to reside on said land from the time of his settlement until December 30, 1913. A short time prior to March 30, 1909, the Pittsburg Mortgage Investment Company agreed to loan said Mason $500, of which sum enough should be paid to him at once to enable him to make commutation of his original settlement to a cash entry of the land settled upon and the balance of said amount was to be paid to him as soon as he had made his proof and received his receipt. This loan was to be represented by a promissory note and secured by a first mortgage upon the land, which mortgage was to be executed by Mason as soon as entry had been made. Thereupon the company paid Mason something over $200, which sum was paid by him on March 30, 1909, to the land office at Woodward, Okla., for the entry of said land, and the said Mason did then and there receive from the proper officers thereof a certificate of purchase or final receipt, which he had at once recorded. On April 1, 1909, Mason executed to the Pittsburg Mortgage Investment Company his note and mortgage in the usual form on the real estate involved here, which mortgage was recorded in the office of the register of deeds of Texas county, and was afterwards sold to the other defendant here. Thereafter Mason sold and conveyed said real estate to one L. B. Sneed, who as a part of the consideration therefor agreed by a provision inserted in the deed of conveyance to assume and pay the aforesaid debt to the Pittsburg Mortgage Investment Company. At the time of the execution of the note and mortgage by Mason to the Pittsburg Mortgage Investment Company it was believed by Mason and the company that the entry of said Mason of said land was valid, and that he (Mason) would, in due time. receive a patent therefor, and that he had the absolute right to mortgage the land as he was doing, and neither party knew of any defect in the entry proceedings, but acted in good faith in the transactions.

In May, 1910, the Commissioner of the General Land Office directed the cancellation of Mason's certificate of entry because of the failure upon the part of Mason to strictly comply with the rules of the Land Department. but the Commissioner expressly ordered that his original entry should remain in full force, and he should be allowed to complete settlement and proof thereunder, which he did on July 10, 1913, by making proof at the government land office and complying with all the requirements of the Land Department, which proof was accepted as

sufficient and upon which another certificate of entry was issued to him for said land, and on April 13, 1914, a patent was issued to said Mason for said land upon said entry.

On December 30, 1913, after the second certificate of entry was issued to Mason, but before the patent was issued to him, Mason conveyed the land to Edna B. Sneed, the wife of the aforesaid L. B. Sneed, "subject to any legal lien existing at this time," and the deed of the said Mason was acknowledged before L. B. Sneed, the husband of Edna B. Sneed, as a notary public. Thereafter Edna B. Sneed commenced suit in the district court of Texas county, alleging Mason's original settlement, final proof and certificate of entry, the execution of the note and mortgage thereon, the subsequent cancellation of the certificate, Mason's second proof and second certificate of entry to him and conveyance to her and a patent to Mason, and she alleged that the mortgage thus executed by Mason to the Pittsburg Mortgage Investment Company was void and constituted a cloud on her title and asked to have the same canceled.

The answer here sets forth the facts stated above and sought a lien upon the real estate to secure said mortgage, but a demurrer was sustained thereto, and from such ruling an appeal is had to this court.

It will be seen from the facts alleged that the Pittsburg Mortgage Investment Company furnished to Mason the money with which to make commutation and pay to the government the amount required by it from him before the government would issue a patent to Mason. Mason paid this money to the government, and received from it a final receipt, and after the final receipt was issued to him the Pittsburg Mortgage Investment Company furnished him $300 more money, and accepted his note secured by a mortgage upon this real estate. Thereafter, for some reason the government canceled the final receipt, but did not cancel the original entry, but permitted Mason to file additional proof in order that he might receive his final receipt, which Mason did, and a final receipt was issued to him and subsequently a patent also.

The validity of mortgages upon public lands executed by claimant under the homestead acts prior to patent or final proof has oftentimes been before the courts of this country. And it is very generally held that the sections of the homestead laws providing that the land shall not be liable for debts incurred prior to the issuance of a patent are for the benefit of the homesteader, and that the law does not prevent a voluntary subjection of the land as security for debts created prior to the patent. The prohibition simply prevents the land being taken from the homesteader for the satisfaction of past debts. This court in the early case of Fariss v. Deming Investment Company, 5 Okla. 496, 49 Pac. 926, said:

"It has been held by numerous courts that after a settler has resided upon the land and cultivated the same in accordance with the law for a period of five years, and made proof of such fact and received his final certificate, he at once becomes entitled to a patent therefor, and the owner of the land, and that his right to convey and pass title thereto is absolute."

And in Newkirk v. Marshall, 35 Kan. 78, 10 Pac. 571, the court, by Justice Valentine, uses the following language:

"Under the United States homestead laws, and by a compliance with them, a person entering a homestead, or in case of his death, his widow, or in case of death of both, his heirs or devisees, obtain a vested right in the homestead at the expiration of five years from the entry thereof, and upon making proper proof is entitled to a patent to the land from the United States. And as soon as a person is entitled to a patent, although it may not yet have been issued, and may not be issued for [five] years, he or she may contract or be contracted with concerning the land. * * * Equity, in order to do justice, and protect the rights of the parties, and to prevent frauds, will generally consider that as having been done which ought to be done; and, in order to protect the rights of all parties, where a patent is due, but has not yet been issued, equity will consider such rights precisely the same as though patent had in fact been issued on the very first day on which it ought to have been issued."

Also, in the case of Stark v. Duvall, 7 Okla. 216, 54 Pac. 453, it is said:

"It is provided by section 2291 of the Revised Statutes of the United States [U. S. Comp. St. 1913, sec. 4532] that no certificate should be given or patent issued before the expiration of five years from the date of entry; that before final receipt an affidavit must be filed by the entryman, averring that 'no part of such land had been alienated.' * * * 'Alienation' is the voluntary and complete transfer from one person to another, and, if it be concerning the transfer of property, it involves the complete and absolute exclusion, out of him who alienates, of any remaining interest, or particle of interest, in the thing transmitted. It involves the complete transfer of the property and possession of land, tenements, or other things to another. And, while other views were formerly held by some of the courts, the doctrine was announced in Mudgett v. Railroad Co. [8 Land Dec. Dept. Int. 243-248] by Secretary Vilas, that the 'alienation prohibited by the statute is an absolute alienation of the land, or a part thereof, whereas the mortgage given by Mudgett was simply a pledge for the security of a debt, to be avoided on payment of the debt,' and that 'there is no good reason

why a homestead entryman, whose good faith is otherwise apparent, may not mortgage his claim, before final certificate, to procure money with which to improve his land, or for any other purpose not intended to impeach his bona fides.' This case affirmed the holding of Secretary Teller in Larson v. Weisbecker [1 Land Dec. Dept. Int. 409], in which it was held that the 'mortgage was a mere security for the money loaned, and the contract does not necessarily divert property from him, and was not a contract or agreement, within the meaning of the statute.' The doctrine thus laid down in the Land Department was adopted and avowed by the Supreme Court of Colorado in Wilcox v. John [21 Colo. 367], 40 Pac. 880 [52 Am. St. Rep. 246], in which it was held that by the later, and, as it was thought, better-considered, cases neither a mortgage nor a deed of trust is a grant or conveyance within the prohibitory clause of the statute."

And it was held in Stewart v. Powers, 98 Cal. 514, 33 Pac. 489, in a like case, that:

"The mortgagor is estopped from defeating by his own act the operation and enforcement of the lien appellants have attempted to create."

And in Orr v. Stewart, 67 Cal. 275, 7 Pac. 693, which involved a mortgage of land under the homestead law, it was held that a mortgagor was estopped from defeating by his own act the enforcement of a lien he had attempted to create, and that the mortgage was not made void or voidable under the provisions of the homestead act. The same doctrine is fully affirmed in Spiess v. Neuberg, 71 Wis. 279, 37 N. W. 417, 5 Am. St. Rep. 211, and in Lang v. Morey, 40 Minn. 396, 42 N. W. 88, 12 Am. St. Rep. 748, in which it was stated in the syllabus that:

"A person making entry under the homestead laws of the United States may execute a valid mortgage upon land so entered, prior to submitting final proof and receiving the final certificate."

It was so held in Fuller v. Hunt, 48 Iowa, 163. It is also provided in section 2296 of the Revised Statutes of the United States (U. S. Comp. St. 1913, sec. 4551), that:

"No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

This section does not prohibit the borrowing of money at the option of the homesteader. It prohibits the land being taken from him for the satisfaction of past indebtedness. It is intended as a protection to the homesteader, and not as a limitation upon his control over the land, in disposing of or borrowing money upon it. It was said by the Supreme Court of Kansas in Watson v. Voorhees, 14 Kan. 329, by Judge Brewer, that:

"The limitations were on the creditor, and not upon the debtor. * * * His deed passed a good title, and he could not thereafter avoid that deed by showing that the only consideration therefor was past indebtedness, and if he could convey absolutely, so he could conditionally. He could use the land as security. He was in no wise limited or restricted in his power of disposing of the property."

And that:

"Having once appropriated it for that purpose, they may not thereafter deny such appropriation."

Also in Blanchard v. Jamison, 14 Neb. 247, 15 N. W. 212, it was held:

"That the homestead act does not prohibit the owner of a homestead from pledging it voluntarily to secure a pre-existing debt, and that the only effect of the statute was to protect the debtor against a compulsory payment of such demand out of the land."

And in Klempp v. Northrop, 137 Cal. 414, 70 Pac. 284, it was held that there was nothing in the homestead act forbidding a voluntary conveyance of the land for security prior to the issuance of the patent. And in the case of Dickerson v. Bridges, 147 Mo. 235, 48 S. W. 825, the prohibition of the homestead act was not to prevent the owner from creating for his own benefit a special lien thereon prior to the receipt of a patent. And in the following cases it is expressly held that a mortgage made by a homesteader, even prior to his right to file final proof, was valid: Fuller v. Hunt, 48 Iowa, 163; Lang v. Morey, 40 Minn. 396, 42 N. W. 88, 12 Am. St. Rep. 748; Skinner v. Reynick, 10 Neb. 323, 6 N. W. 369, 35 Am. Rep. 479; Forgy v. Merryman, 14 Neb. 513, 16 N. W. 836; Stark v. Duvall, supra; Meinhold v. Walters, 102 Wis. 389, 78 N. W. 574, 72 Am. St. Rep. 888; Spiess v. Neuberg, 71 Wis. 279, 37 N. W. 417, 5 Am. St. Rep. 211. And in Dickerson v. Cuthburth, 56 Mo. App. 647, a mortgage given upon homestead lands immediately after entry was held valid. And in the Deming Investment Co. Case, 5 Okla. 496, 49 Pac. 926, supra, it was said that the mortgagee might, upon default, foreclose the same, notwithstanding the fact that a contest had been instituted in the Land Department to cancel the certificate issued to the entryman. And we would call especial attention to the case of McFall v. Murray, 4 Kan. App. 554, 45 Pac. 1100, wherein a mortgage on homestead lands, given to procure money to pay commutation price for cash entry, was held valid, where the mortgagor, having a homestead right to a quarter section of the land, had made settlement and improvements thereon, and had filed the final proofs and also his affidavit of right to commute the same to a cash entry, required under section 2301 of the Revised Statutes of the United

States (U. S. Comp. St. 1913, sec. 4589). In Weber v. Laidler, 26 Wash. 144, 66 Pac. 400, 90 Am. St. Rep. 726, a mortgage made before the entry was held valid as against the mortgagor, where the mortgagor afterwards acquired a patent to the land; and the mortgagor was held estopped from denying his title at the time of making the mortgage. And in Kirkaldie v. Larrabee, 31 Cal. 456, 89 Am. Dec. 205, it is said that one who, while in possession of public land, executes a mortgage thereon and afterwards homesteads the same—

"is estopped from denying the existence of the lien he has attempted to create, and from defeating by his own act the enforcement of the lien against the property thus mortgaged."

Also in the case of Stark v. Morgan, 73 Kan. 453, 85 Pac. 567, 6 L. R. A. (N. S.) p. 934, 9 Ann. Cas. 930, it is said:

"(1) A mortgage in this state, being merely security for a debt, conveys no title, and is not an 'alienation,' within the meaning of section 2291. U. S. Rev. Stat. [U. S. Comp. St. 1913, sec. 4532].

"(2) A mortgage upon government land, made by a claimant holding under the homestead act, prior to final proof, for the purpose of procuring money to improve the land, or for any purpose, provided it is not intended thereby to transfer the title in evasion of the statute, is not void, nor in violation of the homestead laws.

"(3) A homestead claimant, who executed a mortgage under such circumstances, and afterwards procured the title to the land from the government, will be estopped from defeating, by his own act, the enforcement of the lien created by the mortgage. His after-acquired title inures to the benefit of the mortgagee."

For authorities supporting the proposition that a mortgage, executed by the homesteader to secure an indebtedness contracted prior to the issuance of the patent, is valid and enforceable, even though executed prior to the issuance of the patent, or before final proofs have been made so as to entitle the homesteader to a patent, see 6 L. R. A. (N. S.) 935.

In the case of Spiess v. Neuberg, 71 Wis. 279, 37 N. W. 417, 5 Am. St. Rep. 211, the Supreme Court of Wisconsin said:

"Where defendant, having a right of preemption to certain lands, mortgages his interest to plaintiff for a valuable consideration, and subsequently commutes same, proves his occupation, pays the purchase price, and receives patent thereto, the mortgage held by plaintiff is a valid lien upon the property, and the title thus acquired by defendant inures to the benefit of the plaintiff."

See authorities cited in the opinion.

In the case at bar the Pittsburg Mortgage Investment Company loaned to Mason $200 with which to commute his land, and the government issued to him a final receipt, which was duly recorded, and thereupon the company advanced him the additional sum of $300, taking his note therefor, and secured the same by a mortgage upon the real estate. The company did not have any knowledge of any imperfections in the final proof of the entryman. It relied upon the record, and had every reason to believe that this record spoke the truth, and the company had no reason to believe that the government would revoke the final certificate which it had issued to Mason. So here we have a cause where the mortgagee after the final receipt had been issued accepts a mortgage upon the land (homestead) as security for money advanced to the entryman to commute the land and for money advanced after the final certificate had been issued, which certificate was evidence of the fact that the entryman was entitled to a patent to the land. The original entry was not canceled, but Mason was permitted to correct the imperfections in his final proof and receive a final certificate and a patent to this land. When he did this, it inured to the benefit of the Pittsburg Mortgage Investment Company, and gave to it a lien upon this land to secure the payment of the amount due by Mason to it.

We are not unmindful of the two cases of Stark v. Glaser, 19 Okla. 503, 91 Pac. 1040, and Stark v. Fallis, 26 Okla. 358, 109 Pac. 66, but we would call especial attention to the facts in these two cases, inasmuch as it appears that the court said in these cases that the language used was insufficient to constitute a mortgage, and that the contract sued upon was in the nature of a mortgage; that nowhere in the contract was it made expressly a lien upon the land, but while an attempt was made to bind the land for the performance of the contract, it did not, in express terms, make the contract a lien upon the land, and the language used in the contract sought to be enforced was too vague and uncertain to be considered by the court as a lien against and running with the land. To have sustained the contract in the two cases, supra, and subjected the land thereto would have subjected the homestead by a compulsory process to the satisfaction of a claim which did not constitute a voluntary lien upon the property, and which was clearly prohibited by the United States statute in question.

We believe that this opinion is supported by the best-reasoned authority in the courts of this country, and the same is in keeping with the early decisions of this court, and, in our judgment, clearly applies the rule of law to the facts in question, and, enter-

taining this view, we must hold that the trial court was in error in sustaining a demurrer to the answer and cross-petition of the defendants here, and this cause is therefore reversed and remanded, with directions to the trial court to overrule the demurrer to the answer and cross-petition of the defendants below. and to proceed in accordance with this opinion.

By the Court: It is so ordered.