## BURNETT v. TAYLOR*
### (No. 1202; Jan. 31, 1927; 252 Pac. 790.)

PUBLIC LANDS—HOMESTEAD MORTGAGE—FORECLOSURE BY ASSIGNEE—PARTIES—APPEAL AND ERROR—DEMURRER TO INTERROGATORIES—ACTION — INSTRUCTIONS — FRAUD — MISREPRESENTATIONS — MORTGAGES—EXPRESSION OF OPINION 'IS NOT MISREPRESENTATION—GUARANTY—ATTORNEY AND CLIENT—TESTIMONY OF ATTORNEY.

1. Where homesteader had held government land for five-year period of residence, mortgage given by him two years after expiration of period for purpose of securing ditch right for irrigation of homestead lands mortgaged *held* not invalid under Rev. St. U. S. § 2296 (U. S. Code, tit. 43, § 175), providing no lands acquired under homestead laws shall become liable to satisfaction of debt contracted prior to issuance of patent, where mortgagor, though he had not received patent at time of giving mortgage, appeared to have had right thereto, constituting equitable title.

2. In action to foreclose mortgage given for stock representing right to use ditch of reclamation company, with defense of false representations of plaintiff's assignor, assignor *held* not necessary party, under Comp. St. 1920, § 5663, where assignee did not claim to be holder in due course of notes which mortgage secured.

3. Comp. St. 1920, § 5663, providing new party may be brought in to suit, where it appears such party is necessary to final decision on counterclaim, *held* not mandatory.

4. In action for foreclosure of mortgage, where answer was based in part on false representations as to ditch rights which defendant purchased, sustaining demurrer as to

interrogatories in answer regarding dealings between defendant and assignor of mortgage who sold defendant stock representing ditch rights *held* not prejudicial, where matters in question were particularly within defendant's knowledge, and where it was not shown that plaintiff had any information which would assist defendant.

5. In action to foreclose mortgage given for stock representing right to use irrigation ditch, in which defense was false representations of plaintiff's assignor, whether assignor aided or instigated commencement of action *held* immaterial, where case was tried on theory that notes were subject to all equities between original parties.

6. In action to foreclose mortgage on property given for stock representing right in irrigation ditch, to which defense was that plaintiff's assignor made false representations, instruction that representations, to be fraudulent, must be such that man of ordinary prudence would rely thereon, though error, *held* not prejudicial, where evidence was such that jury could not properly have found defendant was misled.

7. Misrepresentations of matters of opinion and law are not actionable, as man of ordinary prudence would be unlikely to rely thereon.

8. In case of misrepresentation of material fact, person who has acted thereon to his injury should not be denied relief because misrepresentation was such as would not have deceived man of ordinary prudence.

9. In action to foreclose mortgage given for stock in reclamation company, which stock represented right to use water from ditch, evidence *held* insufficient to support finding that defendant was deceived by misrepresentation of any material fact as to nature of water right.

10. Statement of one who sold homesteader stock, representing right to use water in ditch, that right was better than flood right, and that there would be plenty of water to irrigate his land, *held* statement of prediction or opinion, where homesteader knew condition of ditch.

11. Statement of opinion may be made under such circumstances that party to whom it was made would be justified in accepting it as representation of fact.

12.   Where homesteader purchased stock in reclamation company, which gave him right to use ditch waters for irrigation, writing given him, reciting that his notes 'and mortgage were to be delvered on his receiving stock in ditch sufficient to furnish water for land described in mortgage, *held* not contract or guaranty, where given for purpose of assuring homesteader that notes and mortgage would not be delivered until he received stock.

13.   In action to foreclose mortgage given for stock in reclamation company, decree that stock be sold with land to satisfy mortgage debt *held* not error, where mortgage included lands with all privileges, hereditaments, and appurtenances; stock in ditch company being nothing more than right to use ditch to convey water for irrigation of mortgaged land.

14.   Permitting attorney of one of parties to testify as witness *held* not error, as attorney was not incompetent; question being merely one of professional ethics.

15.   Attorney may properly testify as to merely formal matters, such as attestation or custody of an instrument.

*See Headnotes: (1) 32 Cyc. p. 1075 n. 34. (2, 3) 4 CJ p. 798 n. 32; 27 Cyc. p. 1565 n. 92; 31 Cyc. p. 471 n. 83; p. 477 n. 50. (4, 5) 1 CJ p. 971 n. 95; 4 CJ p. 934 n. 55 New; p. 957 n. 65, 66; p. 1172 n. 62; p. 1175 n. 13. (6) 26 CJ p. 1142 n. 13. (7, 8) 4 CJ p. 1041 n. 32, 33; 26 CJ p. 1080 n. 87; p. 1082 n. 90; p. 1143 n. 18, 19; p. 1207 n. 87. (9-11) 26 CJ p. 1083 n. 6, 7; 41 CJ p. 435 n. 44; p. 447 n. 46. (12) 28 CJ p. 887 n. 16. (13) 41 CJ p. 482 n. 27. (14, 15) 40 Cyc. p. 2370 n. 36; p. 2371 n. 47, 48, 49 New.

ERROR to District Court, Fremont County; CYRUS O. BROWN, Judge.

Action by Fred Taylor against Isaac N. Burnett. Judgment for plaintiff, and defendant brings error.

*John J. Spriggs,* for plaintiff in error.

The defense of fraud and misrepresentation was good against the plaintiff, he not being a bona fide holder in due course; Taylor admitted that he assured Burnett that there would be plenty of water; one need not know of the falsity of his representations to bind him in damages; Hub-

bard v. Oliver, 139 N. W. 78. The comments of the court were prejudicial to defendant; 26 R. C. L. 1026; Hunter v. Baker Co., 225 Fed. 1006. The abstraction of corporate entity should never be allowed to exclude obvious truth; Securities Co. v. Spiro, 221 P. 856. Oral negotiations are merged in written contracts; Smith v. Fergerson, 221 P. 447; Purdy v. Hunter Co., 221 P. 491; but the rule is not applicable to cases of fraud; Griesa v. Thomas, 161 P. 671; Smith v. Pfluger, (Wis.) 105 N. W. 476; 10 R. C. L. 1019. An instrument containing but part of the agreement, authorizes parol evidence to prove the entire contract; 10 R. C. L. 1035; or to show partial failure of consideration; Id; 3 R. C. L. 942. Parol evidence is admissible to show fraud or duress; 10 R. C. L. 1058. The stock of the company is personal property; 5055 C. S.; Mining Co. v. Conroy, 221 P. 425. Defendant pursued a proper remedy; Crouch v. Huber, 209 P. 766; Healy v. Ginoff, 220 P. 539. It was improper for plaintiff's counsel to take the stand as a witness; instruction number one is erroneous; Bank v. Duncan, 209 P. 149; Glendo Bank v. Abbott, 216 P. 701. It is no defense of misrepresentations to say that they should not have been believed; Chamberlain v. Fuller, (Vt.) 9 A. 832; Warder v. Whitish, (Wis.) 46 N. W. 540; Graham v. Thompson, (Ark.) 18 S. W. 58; Becker v. Clark, 145 P. 65; Stelter v. Fowler, 113 P. 1096; Werling v. Aldred, 157 P. 305. A defrauded vendee is entitled to damages; Stanton v. Zercher, 172 P. 559. Instructions numbered four and five were highly prejudicial to Burnett.

*W. E. Hardin,* for defendant in error.

There was no error in striking defendant's amended defense or denying leave to file an amended answer; Bransford v. Ins. Co., 39 P. 419; Wells v. McCarthy, 90 P. 203; Ass'n. v. Coleman, 44 P. 793. It was within the discretion of the court; 5707 C. S. A Government patent relates back to the original entry and validates intermediate transfers; Roberts v. Hudson, 25 Wyo. 508; Stark v. De-

vall, 54 P. 454; Washington v. Northrop, 70 P. 284. De-
murrer to interrogatories was properly sustained; Hor-
ton v. Driskel, 13 Wyo. 73. Allegations of written con-
tract are not supported by proof of oral contract; defend-
ant in error sold plaintiff stock, which is personal prop-
erty; a water right is realty; Travelers Ins. Co. v. Childs,
25 Colo. 360; Davis v. Randall, 44 Colo. 488; Paddock v.
Clark, 22 Idaho 498. Agreements with reference to water
rights must be in writing; Hays v. Fine, 91 Cal. 391;
Blakenship v. Whaley, 124 Cal. 304. The case of Healey
v. Ginoff, 220 P. 539, is not in point here as it involved a
sale of land; there were no averments of fraud sufficient
to state a cause of action; the action is barred by limita-
tion; 5569 C. S.; Combs v. Watson, 32 O. S. 228; 26 C. J.
1142. To arrest the running of the statute of limitations,
fraud must be secret and not apparent or known; Wood
v. Carpenter, 101 U. S. 135. The jury passed upon all the
evidence, and their verdict should not be disturbed.
Amendments to pleadings should not be allowed which
change the nature of the action; 22 Cyc. 935; or a different
cause of action; 13 Ency. of Proc. 101; 21 C. J. 523-525;
or to change the whole character of the litigation; Lloyd
v. Brewster, 27 Am. Dec. 88. A patent transfers title from
inception of the entry; Roberts v. Hudson, 25 Wyo. 508.
Plaintiff did not act with diligence in discovering alleged
fraud; Burling v. Newlands, (Calif.) 39 P. 49; Weckerly
v. Taylor, 103 N. W. 1065. One will be presumed to have
known whatever, with reasonable diligence, he might
have ascertained concerning fraud complained of; Wood
v. Carpenter, 101 U. S. 808; Simon v. Dalsiel, 67 P. 1180;
Swift v. Smith, 79 Fed. 709; Black v. Black, (Kan.) 68
P. 662. The company held a permit granting only the
waste water; a verdict, on conflicting evidence, will not
be disturbed; O'Brien v. Foglesong, 3 Wyo. 57; Edwards
v. Murray, 5 Wyo. 153. When error is apparent upon the
record, it will be reviewed without objection or exception;
2 Stan. Enc. of Proc. 248.

Kimball, Justice.

The action is for recovery of the amount due on ten promissory notes and for foreclosure of a real estate mortgage given to secure them. The issue as to the amount due on the notes was tried to a jury, and the verdict was in favor of the plaintiff for the full amount claimed. From the judgment on the verdict, and foreclosing the mortgage, the defendant comes here on error.

The notes are for $320 each, dated December 30, 1913, made by defendant, payable to Jesse A. Taylor, the first note due January 1, 1914, and the others successively a year apart thereafter. The mortgage to secure the notes bears the same date, and was executed by defendant and his wife. In the year 1919, after several of the notes were past due, the notes and mortgage were transferred by Jesse A. Taylor to his brother, Fred Taylor, who later brought this action.

The property covered by the mortgage is 160 acres of land which, to be productive, must be irrigated. The land was entered by defendant in March, 1907, as a homestead under the public land laws, and has since been the home of the defendant and his family. Patent issued in August, 1914. In March, 1907, the same month that defendant made his homestead entry, an application was made to the state engineer for a permit to appropriate waters for the irrigation of a tract of land, including the land so entered by defendant, by means of enlargement and extension of an old ditch. This application for a permit was on behalf of the Little Popo Agie Reclamation Company, a Corporation, which we hereinafter will call the "Reclamation Company." The permit was granted April 25, 1907. The order granting it recites:

"The records of the State Engineer's Office show the waters of Popo Agie R. & Tribs. to be largely appropriated. The appropriator under the permit is hereby notified of this fact and the issuance of this permit grants only the right to divert and use the surplus or waste water of the

stream and confers no rights which will interfere with or impair the use of water by prior appropriators.''

Construction work under the permit was commenced in 1907 and some water was available through the enlarged ditch in 1912 or 1913. The construction work was done for the Reclamation Company by Jesse A. Taylor who, as president of the company, in August, 1918, made proof of appropriation under the permit. Certificate of appropriation was issued by the Board of Control in 1920 to the owners of lands irrigable through the enlarged ditch. The defendant is one of the land owners designated in the certificate of appropriation, and the appropriation to him covers 159 of the 160 acres of the mortgaged land. The date of priority of appropriation is March 9, 1907, the day the application for permit was filed.

For his work in constructing the ditch, Jesse A. Taylor received shares of stock in the Reclamation Company. From the beginning it was understood, or taken for granted, that defendant, as an owner of land irrigable from the enlarged ditch, would obtain water for irrigation by means of said ditch. He never has had any other means of irrigating his land. Until 1912 or 1913 he had made no move toward acquiring an interest in, or right to use, the ditch of the Reclamation Company. Whatever arrangement was then made for that purpose was between defendant and Jesse A. Taylor. Taylor testified that the first ''business talk'' about the matter was had in the spring of 1913, when defendant was wanting to use water through the ditch, and Taylor told defendant he would have to get stock in the Reclamation Company. Following this preliminary talk, the defendant bought the stock from Taylor, at the agreed price of $3200, and on December 30, 1913, defendant and his wife executed the notes and mortgage to secure the payment of the purchase price in ten instalments. When the notes and mortgage were signed, the certificate to show defendant's ownership of the stock was not ready for delivery. Accordingly, the

notes and mortgage were left in the hands of the attorneys who had prepared them, and the defendant was given a writing, signed by the attorneys, reciting that the notes and mortgage were to be delivered to Jesse A. Taylor upon his delivery of stock for defendant ''in the Taylor ditch sufficient to furnish water for the land, 160 acres, described in said mortgage.'' By the ''Taylor'' ditch was meant the ditch of the Reclamation Company. The certificate showing defendant's ownership of the stock was delivered to him in January, 1915, and the notes and mortgage delivered to Jesse A. Taylor. The defendant accepted the stock, became active in the affairs of the Reclamation Company, serving one or two years as director, and used water from the company's ditch for irrigation of his lands. His right to use water through the ditch depended, as we understand, on his ownership of the shares of stock in the Reclamation Company, though he began to exercise the right in 1913 or 1914, before he received his stock certificate.

Defendant pleaded that patent to the mortgaged lands did not issue until August, 1915 (1914); that the debt was contracted before that date, and that the notes and mortgage were illegal and void because contrary to Section 2296, U. S. Rev. St. (U. S. Code, Title 43, Sec. 175) which provides that no lands acquired under the homestead laws ''shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of patent therefor.'' The trial court ruled that this plea stated no defense, and struck it from the answer. The defendant complains of that ruling, but, we understand, does not claim that there was any error in disposing of the defense on a motion to strike instead of demurrer.

The notes and mortgage were given a year and nine months after the expiration of the five-year period of residence. There is no allegation in the answer, and nothing in the evidence to show, that the defendant did not have equitable title to the land when he contracted the debt

and gave the mortgage. Under many decisions of state courts, cited *infra,* it may be immaterial whether the debt for which the mortgage is given is contracted before or after the homesteader acquires the equitable title to the land. Under Ruddy v. Rossi, 248 U. S. 104, 39 S. Ct. 46; 63 L. Ed. 148; 8 A. L. R. 843, homestead lands cannot be taken on execution to satisfy a judgment on a debt contracted before patent though after final receipt. With regard to mortgages of homestead lands, while we find no case holding such mortgages invalid where given to secure a debt contracted after the right to patent has been perfected, there are some early decisions holding or intimating that the mortgage is void if given to secure a debt contracted before there is a right to patent. Webster v. Bowman, (C. C.) 25 Fed. 889; Nycum v. McAllister, 33 Ia. 374; Watson v. Voorhees, 14 Kan. 328; Smart v. Kennedy, 123 Ala. 627; 26 So. 198. We need not say whether this distinction is justifiable under the federal statute.

We find no case holding that such lands are not liable to the satisfaction of a debt contracted after the entryman has acquired the right to patent and secured by an otherwise valid mortgage then given. The question has been much discussed in the decisions, and we may be content to cite the authorities without repeating the arguments. The earlier cases may be found in Stark v. Morgan, 73 Kan, 453, 85 Pac. 567, and notes thereto in 6 L. R. A. (N. S.) 934 and 9 Ann. Cas. 934. Later cases are: Runyan v. Snyder, 45 Colo. 156, 100 Pac. 420; Pittsburg Mtg. Inv. Co. v. Sneed, 60 Okla. 98 159 Pac. 515; Adam v. McClintock, 21 N. D. 483, 131 N. W. 394; Heran v. Elmore, 37 S. D. 223, 157 N. W. 820. Still later cases in which Ruddy v. Rossi, supra, is considered, are: First State Bank v. Durand, 69 Mont. 184, 222 Pac. 434; Moore v. Tillman, 170 Ark. 895, 282 S. W. 9; Bashore v. Adolf, 41 Ida. 84, 238 Pac. 534; Opinion of Assistant Secretary Finney, 48 L. D. 582; Lockwood v. Lounsbury, 48 L. D. 637.

It will be noticed that many of these cases hold the mortgage valid though given before the expiration of the five-year period of residence. In this case we need not go so far. We infer from the plea that the debt was contracted and the mortgage given after defendant had done everything to perfect his entry (Adam v. McClintock, 21 N. D. 483, 131 N. W. 394 and Smart v. Kennedy, 123 Ala. 627, 26 So. 198), and hold that the mortgage, given almost two years after the expiration of the five-year period of residence, for the purpose of securing a debt for a ditch right for the irrigation of the mortgaged homestead lands, is not rendered invalid by the invoked federal statute. If there was any error in striking the defense, the defendant was not prejudiced.

The defendant contended that he had been induced to give the notes and mortgage by false representations made to him by Jesse A. Taylor. Briefly stated, these representations, as pleaded and testified to by defendant, were that the water right for defendant's land was a "good right," better than "flood right," and that there would be plenty of water each year after the ditch was finished. Defendant claimed, also, that Jesse A. Taylor promised, in consideration of the notes and mortgage, that defendant should have sufficient water for the proper irrigation of his lands. He contended that he had never been able to obtain sufficient water, and that crops planted each year, beginning with 1914, were a partial failure for lack of sufficient water to irrigate them. He sought to recoup his damages either on the theory that he had been fraudulently induced to give the notes and mortgage, or on the theory of failure of consideration. Both these issues were submitted to the jury and settled in favor of plaintiff by the verdict. The jury evidently believed that defendant was not defrauded, and that he received from Jesse A. Taylor all that Taylor agreed to give him for the notes and mortgage, that is, the shares of stock in the Reclamation Company.

It is contended that the court excluded evidence material on the issue of fraud, and we find in defendant's brief this statement: "All verbal statements or representations constituting fraud were excluded." The contention is not supported by the record. The defendant was permitted to testify to all statements claimed to have been made to him that could have any bearing on the issue of fraud as raised by the defendant's answer. Defendant testified that, in 1912, at the request of Jesse A. Taylor, he signed a writing agreeing to take water for his land at $15 an acre. Plaintiff denied that there was such a writing, and it was not produced at the trial. Defendant, in testifying as to the contents of this writing, was not permitted to relate verbal statments not included in the writing. But he was permitted to testify fully as to those statements when it appeared that they were offered on the issue of fraud.

Defendant contends that there was error in denying his application to have Jesse A. Taylor made a party to the action. Section 5663, Wyo. C. S. 1920 is relied on. The statute reads:

"When it appears that a new party is necessary to a final decision upon the counter-claim, the court may either permit the new party to be made by a summons to answer the counter-claim, or may direct the counter-claim to be stricken out of the answer and made the subject of a separate action."

It is not contended that Jesse A. Taylor was a necessary party, and we think it clear that he was not. Davis v. Sutton, 23 Minn. 307; State v. Superior Court, 113 Wash. 439, 194 Pac. 412. If he had been a necessary party, other sections of the code would apply. The plaintiff was not a holder in due course of the notes in suit, and the case was tried and submitted to the jury on the theory that defendant was entitled to urge in defense all matters that might have been urged against Jesse A. Taylor.

Assuming that the statute in question would have authorized the bringing in of Jesse A. Taylor as a party, the court did not abuse its discretion in refusing to do so. The statute, if applicable, is not mandatory.    The verdict established the fact that there was no defense to the notes, and we cannot see how the result could have been any different if Jesse A. Taylor had been made a party to the action.

It is contended that the court erred in sustaining a demurrer to some of the interrogatories annexed to defendant's answer.   Most of the interrogatories in question sought information as to the dealings between Jesse A. Taylor and the defendant.   There is no reason to suppose that the plaintiff had any information on the matters inquired about that would have enabled him to make any answer that would have been at all helpful to the defendant.   The matters inquired about were peculiarly within the knowledge of the defendant, and we think he was not prejudiced by the sustaining of the demurrer.   By one interrogatory the plaintiff was asked whether Jesse A. Taylor had aided or instigated the commencement of the action.    This, we think, was immaterial in view of the trial on the theory that the notes were subject to all equities between the original parties.

There were a great many objections interposed by both sides during the taking of evidence at the trial, and much heated discussion among the attorneys.   We cannot undertake a recital, much less a discussion, of the various errors assigned with reference to the rulings on the admission of evidence, or on the objections to remarks and conduct of counsel.   It must suffice to say that it appears to us that there was no material or harmful error in any of the matters complained of.   The defendant was given much latitude in presenting his case.   He seems to have got before the jury all the material evidence he had on the issues on which he relied.   If there were any errors in the rulings during the taking of testimony they were

such as must be disregarded as not prejudicial to any substantial right of the defendant. Wyo. C. S. 1920, Sec. 5868.

The defendant complains of the instruction defining "false representations," because the jury were told that the representations, to be fraudulent, must be "such that a man of ordinary prudence would be likely to rely upon."

Precedents are to be found that seem to justify the instruction. In 26 C. J. 1142 it is said:

" It is held by the weight of authority that ordinarily representations are not actionable unless the hearer was justified in relying thereon in the exercise of common prudence and diligence."

This may "ordinarily" be so. It is on this ground that misrepresentations of matters of opinion and of law are not actionable. Williston on Contracts, Sec. 1516. But where there has been a misrepresentation of a material fact, and all other elements of fraud are present, we think the best considered authorities are to the effect that the injured party is not to be denied relief because the misrepresentation was one that would not have deceived a man of ordinary prudence.

In Redgrave v. Hurd, 20 Ch. Div. 1, 13. Jessel, M.R., said:

"Nothing can be plainer, I take it, on the authorities in equity, than that the effect of false representation is not to be got rid of on the ground that the person to whom it was made has been guilty of negligence."

In Albany County Savings Inst. v. Burdick, 87 N.Y. 40, 49, it was said:

"Where one sues another for negligence, his own negligence contributing to the injury will constitute a defense to the action; but where one sues another for a positive, willful wrong or fraud, negligence by which the party

injured exposed himself to the wrong or fraud will not bar relief. If the rule were otherwise, the unwary and confiding, who need the protection of law the most, would be left a prey to the fraudulent and artful practices of evildoers.''

In Barndt v. Frederick, 78 Wis. 1, 11, 47 N.W. 6, 9; 11 L.R.A. 199, it is said:

''If the representations were so extravagant that sensible, cautious people would not have believed them, that is a proper consideration for the jury in determining whether the plaintiff believed and relied upon them; but it does not preclude a finding that plaintiff did so, nor relieve the defendant from liability for his fraud if he committed fraud. It is as much an actionable fraud wilfully to deceive a credulous person with an improbable falsehood as it is to deceive a cautious, sagacious person with a plausible one. The law draws no line between the two falsehoods.''

Other authorities to the same general effect are: Hale v. Philbrick, 42 Ia. 81; Prescott v. Brown, 30 Okla. 428, 120 Pac. 991; Brown v. Hill (Tex. Civ. App.) 190 S. W. 1167; Bristol v. Braidwood, 28 Mich. 191; King v. Livingston Mfg. Co., 180 Ala. 118, 60 So. 143; Eastern Trust & B. Co. v. Cunningham, 103 Me. 455, 70 Atl. 17; Bowe v. Gage, 127 Wis. 245; 106 N.W. 1074, 115 Am. St. Rep. 1010; Smith v. McDonald 139 Mich. 225, 102 N. W. 738; Maxfield v. Schwarts, 45 Minn. 150, 47 N. W. 448; 10 L. R. A. 606. These cases show the trend of the modern authorities and what is considered by eminent text writers to be the right principle. Williston on Contracts, Sec. 1516; Bigelow on Fraud, pp. 523-524.

We think, however, that the instruction was not harmful in this case. While there was evidence introduced by the defendant to show that the ditches of the Reclamation Company were too small, he did not testify that he was deceived by any representations as to the size and character of the ditches. He was on his land for the many

years during which the ditches were being constructed, and probably knew as much about them as anyone else. There was nothing said or done to induce him to believe that the Reclamation Company was intending to store water by reservoirs, or to obtain any supply of water in addition to the natural flow of the stream. The defendant's claim is that he was misled by representations that the water right would be a ''good'' right, better than a ''flood right,'' and that there would be plenty of water to irrigate his land. We think it would have been most unreasonable for the jury to have found that the defendant was deceived by such statements as to the nature of his water right. That right was as good, and had as early a priority, as was then obtainable. The defendant could not expect the jury to find that he was led to believe that he would have a right to take water to which, under the constitution, the statutes, and the practice known to all irrigators, prior appropriators had a better right. He might as well contend that he could be deceived by a statement that he would have a right to take any other property belonging to his neighbors. The defendant makes much of the recital in the permit quoted in our statement of the facts; and contends that by this endorsement on the permit, the water right was a flood right, though represented to him as better than a flood right. We cannot see that this endorsement on the permit is at all material. It first recites a fact—that the records show that the waters of the stream have been largely appropriated; and then states that rights acquired under the permit will be subject and inferior to the rights of prior appropriators. The permit would have exactly the same effect without this endorsement. Laying aside all question as to defendant's constructive knowledge of the contents of the permit, we think he was not deceived on any material matter by the statement that the water right was or would be better than flood right. The defendant testifies that he understood that a flood right was a right to

take water during periods of high water. His water right, as evidenced by his certificate of appropriation, contains no such limitation. Nor do we find any evidence that in practice his use of water was limited to times of high water. In fact, when the defendant came to offer evidence to show that he did not get sufficient water, he seemed to contend that the deficiency was caused by defects in the ditch rather than by any shortage of water available under his right of appropriation.

We are convinced that there was no substantial evidence that would have supported a finding that defendant was deceived by misrepresentation of any material fact as to the nature of his water right. The statement that there would be plenty of water was a prediction or opinion. We may concede that a statement of an opinion may be made in such circumstances that the party to whom it is made will be justified in accepting it as the representation of a fact. For instance, in this case, if there had been evidence to warrant the belief that the statement that there would be plenty of water was intended by Jesse A. Taylor, and accepted by defendant, as a representation that the ditches were of sufficient size, and that defendant was deceived thereby to his damage, a finding of fraud by the jury might have been upheld. But it is clear under the evidence that the statement, if made, was a mere prediction as to the quantity of water that would be available in the stream. The defendant irrigated from the ditch at least one season before the notes and mortgage and stock certificate were delivered. He used the ditch several other seasons without any claim of fraud. He testified that he discovered the fraud later, when he procured copies of the permit and certificate of appropriation.

We think the record discloses a situation not uncommon in this state. The defendant made a homestead entry of land that needed water for its irrigation. About the same time, some of his neighbors formed a corporation

for the purpose of constructing a ditch intended for use in irrigating defendant's homestead and other lands. A permit was procured, and construction work on the ditch was begun. The defendant then had no interest in the ditch company, but it was understood, perhaps without any writing or definite contract, that when the ditch was completed he would procure an interest by contributing toward the expense of constructing it. The ditch company decided that this contribution should be made by the purchase of an amount of stock that would give the stockholder a proportionate right to use the ditch. In this case the stock was first issued to Taylor, who built the ditch for the company, and defendant, who had no other way to irrigate his land, obtained an interest in the ditch by buying from Taylor shares of stock to represent his proportionate right and interest in the ditch. The purchase price was his contribution toward the expense of building the ditch, and the stock represents his ditch right as distinguished from his water right. The water right comes to defendant from the state and is evidenced by the certificate of appropriation. This, we think, explains the wording of the writing given to defendant by the attorneys who prepared the notes and mortgage. That writing cannot be construed as a contract or guaranty by Taylor, but, as explained by other facts and circumstances, was given for the purpose of assuring the defendant that his notes and mortgage would not be delivered until he had received sufficient stock of the Reclamation Company to entitle him to his proportionate right to use the ditch for irrigation of the mortgaged lands. There is no claim that defendant did not receive the amount of stock that represented that right.

The mortgage did not specifically describe the stock in the ditch company, but the plaintiff asked, and the court decreed, that it be sold with the land to satisfy the debt. The mortgage described the lands, "together with the privileges, hereditaments and appurtenances there-

unto in any wise appertaining or belonging.'' From what we have said it appears that the stock in the ditch company is nothing more than a right to use the ditch to convey water for irrigation of the mortgaged lands. Under the law as stated in Frank v. Hicks, 4 Wyo. 502, 520-532, 35 p. 475, 1025, we think the trial court was not in error in decreeing that the stock be sold with the land to satisfy the mortgage debt.

Mr. Hardin, an attorney for the plaintiff, testified as a witness. The defendant objected on the ground that it is improper for an attorney to testify in support of his client's case, and it is contended that the court erred in overruling the objection. The question raised might be shortly disposed of by saying that the point is one of professional ethics, and that an attorney is not incompetent as a witness in a case in which he is engaged. Fletcher v. Ketcham, 160 Ia. 364, 141 N.W. 916. We may add, however, that Mr. Hardin, who was secretary of the Reclamation Company, merely testified as to matters shown by the records of the company. It is not improper for an attorney to testify ''to merely formal matters, such as the attestation or custody of an instrument and the like.'' 19th Canon of Professional Ethics, adopted by Am. Bar Ass'n. It is likely that the facts testified to by this witness would be considered ''merely formal matters'' within the exception to the general rule.

Some alleged errors discussed by counsel for defendant have not been mentioned in this opinion. We have, however, carefully considered all of them, and find no error that would justify a reversal or modification of the judgment. Indeed, it is doubtful whether a verdict for defendant would have been supported by sufficient evidence.

The judgment of the district court is affirmed.

*Affirmed.*

BLUME, Ch. J., and POTTER, J., concur.